## SOUTHEASTERN BAPTIST THEOLOGICAL SEMINARY, INC. v. WAKE COUNTY AND THE TOWN OF WAKE FOREST.

(Filed 29 January, 1960.)

**1. Taxation § 19—**

Statutes enacted by the General Assembly in the exercise of the authority granted by the Constitution to exempt certain classes of properties from taxation, Constitution of N. C., Article V, Section 5, are to be strictly construed, when there is room for construction, against exemption and in favor of taxation, but this rule of strict construction does not require that the statute be narrowly construed but only that its application should be restricted to those classifications coming clearly within its terms.

**2. Statutes § 5a—**

The words of a statute must be given their natural and ordinary meaning.

**3. Taxation § 20—**

Dwellings rented by a nonprofit educational institution to married students and instructors, and its registrar, which properties are near to and used in connection with its main plant, the dormitory accomodations on the campus being inadequate to its needs, are exempt from taxation under the provisions of G.S. 105-296 (4), and the fact that there was no adjustment in the salaries of the instructors and the registrar predicated upon the amount of rents paid for their respective premises does not alter this result.

**4. Appeal and Error § 49—**

The findings of fact of the trial court are conclusive on appeal when supported by competent evidence.

DENNY, J., took no part in the consideration or decision of this case.

APPEAL by defendants from *Clark*, *J.*, at November 1958 Civil Term, of WAKE.

Controversy without action originally submitted under G.S. 1-250 upon agreed statement of facts relating to the taxable status of sixteen separate units located in Town of Wake Forest in Wake County, heard in this Court on former appeal as No. 461 at Spring Term 1958, reported in Vol. 248 of North Carolina Supreme Court Reports at page 420 (103 S.E. 2d 472).

There the judgment from which appeal was taken was vacated in its entirety, without approving or disapproving any of the rulings on which judgment was based. And it is there said that if the parties so desire, they may submit an agreed statement setting forth with particularity in respect to each of the sixteen properties "the facts upon which the controversy depends" as required by G.S. 1-250.

The record on this appeal shows that the controversy arises out of facts which have been agreed to by the parties and are submitted in part as follows:

"3. That the said Seminary is a non-profit corporation, and its activities are specifically limited to educational purposes, and it is an educational institution as defined in General Statutes of North Carolina, Section 105-296.

"4. That the said Seminary acquired the properties hereinafter listed by a Warranty Deed from the Trustees of Wake Forest College, bearing date June 29, 1956, and recorded July 9, 1956, in Book 1244 at page 333, Registry of Wake County, and since receiving said deed the said Seminary has been and now is the owner of said properties in fee simple, and said Seminary is in the exclusive possession and control of same. * * *

"6. That said properties consist of separate units, located as shown in map hereto attached and made a part hereto as Exhibit "B"; and there are buildings on each unit, and the buildings thereon are presently used as residences exclusively by the officers, instructors, students and their families of said Seminary, and have been so used since the acquisition of title; and the occupants pay reasonable rentals to the Seminary, the names, amount of rent and the relationship, if any, of the occupant of each property to the Seminary being as set forth in Exhibit "A" hereto attached. (Exhibits A & B deleted)

"7. That Wake Forest College, former owner of said properties, regularly and for a number of years listed said properties for taxation with Wake County and the Town of Wake Forest, and paid the *ad valorem* taxes assessed against same. That during tax listing time for the year 1957 the said Seminary consulted the tax listing authori-

ties of both Wake County and the Town of Wake Forest and advised said authorities of facts and circumstances existing in relation to said properties and advised them that it was the opinion of the Seminary that said properties were exempt from taxes by reason of the provisions of General Statutes of North Carolina, Section 105-296 (4), and Article 5, Section 5 of the Constitution of North Carolina, and requested said taxing authorities to eliminate said properties from tax listings for the year 1957 and future years.

"8. That said taxing authorities, both of Wake County and the Town of Wake Forest, refused to accept the Seminary's views, and, over its objection, caused said properties to be listed on the tax abstracts for the year 1957 and placed values thereon as follows: (List and valuation here shown).

"9. That against said properties Wake County has assessed taxes for 1957 in the total amount of $684.50.

"10. That against said properties the Town of Wake Forest has assessed taxes for 1957 in the amount of $457.83.

"11. That the said Seminary has paid both items of taxes as assessed to Wake County and to the Town of Wake Forest, and has made said payments under protest, and has made written demand upon the respective taxing authorities for refund within thirty days thereafter, all in conformity with the provisions of General Statutes of North Carolina, Section 105-267; and said taxing authorities of Wake County and the Town of Wake Forest have refused said demands.

"12. That the said Seminary contends that said properties are exempt from said tax assessment, by reason of General Statutes of North Carolina, Section 105-296 (4), and Article 5, Section 5 of the Constitution of North Carolina; that the amount paid to Wake County and to the Town of Wake Forest should be refunded; that the listings and the assessments made for 1957 should be nullified, and also the listings for future years to be prohibited so long as same are used as residences by the officers, instructors and students of the Seminary.

"13. The taxing authorities of both Wake County and the Town of Wake Forest contend that said properties are not exempt from taxes, or that there may be doubts in this respect, and that they are without authority and are unwilling to assume the responsibility of exempting said properties until there has been a legal determination of the question involved.

"Wherefore, the respective parties pray that the court consider the facts submitted and render an appropriate judgment based upon

said facts, and particularly determining whether the properties listed are and should be exempt from *ad valorem* taxes of Wake County and the Town of Wake Forest."

The record also shows that as of the November 1958 Term of Superior Court of Wake County, judgment was filed by *Clark, J.* presiding, 16 February 1959, as follows:

"This cause coming on to be heard before the undersigned at the November 1958 Term of the Superior Court of Wake County, as a controversy without action, and it appearing that all parties had stipulated and agreed to a considerable part of the facts necessary to adjudicate this controversy, but that it would be necessary to hear evidence as to certain other facts, and all parties having waived trial by jury and agreed that the court should hear the evidence, make its findings as to additional facts not set out in the stipulation, together with its conclusions of law; and render judgment accordingly, out of term and out of the district; and the court having heard the testimony of Gordon M. Funk, who testified for plaintiff and whose testimony was the only evidence offered by either plaintiff or the defendants, makes the following findings of fact, in addition to the facts set forth in the stipulation of the parties as "Agreed Statement of Facts" in thirteen paragraphs in pages 2 through 12, inclusive, of the transcript of the hearing before this court:

"1. That there are sixteen properties which plaintiff contend are tax exempt, eleven of which were rented by the Seminary, the income from them being paid by each tenant into the office of the business manager, and placed in the general operation fund of the Seminary used to pay the expense of its educational program. All of these properties are within one block of what is admitted to be the original campus or main part of the Seminary.

"2. That five of the eleven houses rented were rented to students in the Seminary who, with their families, occupied these quarters and paid rent each month into the office of the business manager. These five properties are designated:

200 North Avenue
206 North Avenue
309 West Avenue
112 South Wingate Street
114 South Wingate Street

"None of these houses were officially designated or earmarked as dormitories or as apartments or quarters for married students. The apartments and facilities on the main campus for married students were fully occupied, and the Seminary had no other facilities to make

available to these students with families near to the campus. Many of the students at the Seminary are married and have families due to the age group which makes up the Seminary student body. There was a shortage of housing for such students. .

"3. That two of the sixteen properties in question, namely:

319 West Avenue

108 South Wingate

were rented to instructors employed by the Seminary. These teachers occupied the houses with their families as private residences. These two houses were not earmarked or designated as instructors' quarters. The rental resulted simply from the fact that these two instructors need some such housing and the Seminary had these units vacant. The use of these quarters had no effect upon the salaries of either of these instructors and was in no way connected with their employment or the particular positions they held. No deduction was made for the rent charged.

"4. One of the parcels in question, namely: 315 West Avenue was rented to the Registrar of the Seminary who occupied it with his family as a private residence. The duties of the Registrar were to maintain the academic records of all students, to act as secretary to the faculty, and to advise those making policies as to academic rules.

"5. Of the sixteen properties in question, three were rented to other employees of the Seminary as private residences; of these:

210 North Wingate was rented to the 'Head Custodian' whose duty it was to supervise some 5 or 6 janitors who were employed to maintain cleanliness in the Seminary buildings and to see that the janitorial services, as ordered, were properly carried out.

204 North Avenue was rented to a carpenter employed by the Seminary.

216 North Wingate was rented to the manager of the Seminary Cafeteria.

"In none of these three cases was there any specific connection between the job of the employee and the assignment of quarters. Use of the quarters was in no way treated as compensation and no payroll deduction was made for rent due.

"6. Two of the sixteen properties had vacant houses on them. They were:

312 Falls Road

203 North Wingate Street

"These residences were in poor state of repair and unfit for occupancy. One is now a student parking lot and the other now a trailer park for students.

"7. One of the properties in question was vacant lot. This was: 303 Pine Street.

"A duplex student apartment building is now on the lot.

"8. On two of the properties a building designed for (and which now is) the Seminary Cafeteria was under construction. About 20% of the construction work had been completed. After completed, the cafeteria was used primarily by students but was also open to the general public. This building is on both lots designated:

102 South Wingate

106 South Wingate."

Hence, "upon the agreed statement, stipulation and facts found, the court concludes as a matter of law:

"(1) All of the sixteen properties in question are so located with reference to the main buildings of the Seminary as to come within the definition of the term 'additional adjacent land' as used in G.S. 105-296 (4). 218 N.C. 718.

"(2) The five properties rented to married students were 'wholly devoted to educational purposes' to the same extent as the dormitory buildings or married student apartments since such use represented overflow from the inadequate facilities on the main part of the campus. Therefore, these are exempt under G.S. 105-296. (4).

"(3) That two of the properties were actually used as residences by instructors of the Seminary and therefore are specifically exempt by the express provision of the statute.

"(4) That the Registrar of the Seminary is an 'officer' within the meaning of the statute, his duties being comparable to that of the secretary of a business firm and his position being one of authority and trust and official in nature. Therefore, the premises used as a residence by the Registrar of the Seminary is exempt under the express provision of G.S. 105-296 (4).

"(5) That the three properties, to wit:

210 North Wingate Street

204 North Avenue

216 North Wingate Street

being rented to other employees of the Seminary (the custodian, cafeteria manager and carpenter) were not wholly devoted to educational purposes. Plaintiff has shown no specific connection between the assignment of these quarters and the work of these employees at the Seminary nor are these employees shown to be 'officers or instructors.' Therefore, these three properties are subject to taxation under the rule of *Rockingham v. Board of Trustees,* 219 N.C. 342.

"(6) That the vacant houses and the vacant lot are reasonably

necessary for the convenient use of the Seminary, taking into consideration the facts established by the evidence of the need for additional housing for married students with families needing accomodations on or near the main part of the campus. It was reasonably necessary for these properties to be so held by the Seminary until it could convey them to actual use as it later did. Therefore these four properties are exempt.

"(7) The two properties on which construction of the cafeteria building had begun was in 'actual use' within express terms of the statute. The problem created by the fact that the public patronized the cafeteria after it was completed some time later, would not arise until such use is made of the building. Any material amount of business done by the general public in the cafeteria would, in the opinion of the court change its tax status. However, as of January 1, 1957, a necessary Seminary building was being constructed on these lots and they are therefore exempt. Its status in later years depends on its use in later years."

Therefore it is held that plaintiff is entitled to recover as taxes paid the amounts stated as paid upon all the parcels listed except "as to the three:

210 North Wingate Street
204 North Avenue
216 North Wingate Street"

as to which plaintiff has failed to show wherein same come within the statutory exemptions.

And in accordance therewith judgment is entered in favor of plaintiff against defendants, except with respect to the three items which the court held to be taxable. Defendants except and appeal to Supreme Court and assign error.

*Mordecai, Mills & Parker for plaintiff, appellee.*

*Thomas A. Banks, J. C. Keeter, Wright T. Dixon, Jr., for defendants, appellants.*

WINBORNE, C. J. The Constitution of North Carolina, Article V, Section 5, declares in respect to property exempt from taxation, that "The General Assembly may exempt * * * property held for educational, scientific, literary, charitable or religious purposes * * *." And pursuant to the authority so given by the Constitution the General Assembly has enacted a statute, G.S. 105-296, declaring in pertinent part that "the following real property, and no other shall be exempted from taxation * * *: (4) Buildings, with the land actually occupied,

wholly devoted to educational purposes, belonging to, actually and exclusively occupied and used for public libraries, colleges, academies, industrial schools, seminaries, or any other institutions of learing, together with such additional adjacent land owned by such libraries and educational institutions as may be reasonably necessary for the convenient use of such buildings, and also buildings thereon used as residences by the officers or instructors of such educational institutions."

In this connection this Court stated in *Harrison v. Guilford County,* 218 N.C. 718, 12 S.E. 2d 269, that statutes exempting specific property from taxation because of the purposes for which such property is held and used, are and should be construed strictly, when there is room for construction, against exemption and in favor of taxation (citing cases).

"By the rule of strict construction, however, is not meant that the statute shall be stintingly or even narrowly construed * * * but it means that everything shall be excluded from its operation which does not clearly come within the scope of the language used," *Stacy, C. J.,* in *S. v. Whitehurst,* 212 N.C. 300, 193 S.E. 657.

The words used in the statute must be given their natural or ordinary meaning. 71 C.J. 353, *Borders v. Cline,* 212 N.C. 472, 193 S.E. 826.

The words of G.S. 105-296 (4), given their ordinary meaning, are clear and require no construction. Hence, testing the findings of fact in respect to each unit of property here under consideration, in the light of language of the statute G.S. 105-296, it appears that the thirteen units listed by the court below as exempt come within the description of property permissively exempt from taxation under the Constitution and the statute. It is axiomatic in this State that the findings of fact made by the judge of Superior Court, if supported by any competent evidence, are conclusive and binding on appeal to this court. And the findings of fact so made in instant case appear to be supported by sufficient competent evidence.

Finally it may be noted that since plaintiff has not appealed, question as to correctness of the conclusion of law in the light of the findings of fact in respect to the three units held to be taxable is not before the Court for decision.

In the record of case on appeal defendants list many exceptions and assignments of error. They have been given due consideration, and in them prejudicial error is not made to appear.

The judgment from which appeal is taken is
Affirmed.

DENNY, J., took no part in the consideration or decision of this case.