WILLIAM A. CARVER v. HORACE CALVIN MILLS AND R. R. FRIDAY, ADMINISTRATOR OF THE ESTATE OF JOE RICHARD MILLS, DECEASED

No. 7427SC443

(Filed 21 August 1974)

Insurance § 112— medical payments — subrogation of insurer

    Under the terms of an automobile liability policy, the insurer was subrogated to the rights of the insured against the tortfeasor for an amount paid to the insured under the medical payments provision of the policy and was entitled to recive such amount from the insured's recovery by consent judgment against the tortfeasor; the subrogation provision of the policy did not constitute the assignment of a personal injury claim which was void as against public policy.

APPEAL by respondent State Farm Mutual Automobile Insurance Company from *Friday, Judge,* 23 January 1974 Session of Superior Court held in GASTON County. Heard in the Court of Appeals on 12 June 1974.

On 20 April 1970 respondent, State Farm Mutual Automobile Insurance, through its agent, Herbert M. McMahan of Sevierville, Tennessee, issued automobile liability policy No. 1844-533-B22-42A to the plaintiff, William A. Carver, who was likewise from Sevierville.

On 24 January 1971 plaintiff was operating the vehicle described in said policy on a public highway in Gaston County when he was involved in a collision with an automobile owned by defendant Horace Calvin Mills and operated at the time of the accident by defendant Joe Richard Mills. The plaintiff suffered personal injuries as a result of the accident.

On 24 May 1971 respondent paid $1,000.00 to the plaintiff pursuant to the medical payments provision of the aforemen-

tioned insurance policy. Coterminus with this payment, the plaintiff signed a writing submitted to him by the respondent and designated as a "Loan Receipt Under Medical Payments Coverage."

On 9 August 1971 the plaintiff filed an action against Horace Calvin Mills, owner of the vehicle involved in the accident with plaintiff. On 17 April 1973 the plaintiff and defendants entered into a consent judgment by which the plaintiff was awarded $9,000.00. Prior to this consent judgment the plaintiff and defendants had been notified by respondent of its claim to the sum of $1,000.00 of any monies recovered by the plaintiff from the defendant's liability insurance carrier. The plaintiff denied respondent was entitled to this sum. The consent judgment, in speaking to the issue of who was entitled to the $1,000, stated:

> "It Is Further Ordered, Adjudged, And Decreed that the Clerk of Superior Court of Gaston County shall disburse from the proceeds of this settlement the sum of $8,000.00 to the plaintiff and the remaining sum of $1,000.00 shall be retained by the Clerk for disbursement to either the plaintiff or to State Farm Mutual Automobile Insurance Company pending further orders of the Court."

On 3 July 1973 plaintiff filed a motion in the cause praying that an order be entered requiring the Clerk to pay to plaintiff the $1,000.00. Likewise, on 10 July 1973, respondent filed a motion in the cause requesting that an order be entered requiring payment of the $1,000.00 to it.

The motions were heard before Judge Friday at the 17 December 1973 Session of Superior Court in Gaston County; and on 23 January 1974, Judge Friday entered an order awarding the $1,000 to the plaintiff.

The respondent appealed.

*Basil L. Whitener and Anne M. Lamm for plaintiff appellee.*

*Hollowell, Stott & Hollowell by James C. Windham, Jr., for respondent appellant.*

HEDRICK, Judge.

The single question to be determined on this appeal is: Whether, under the terms of the insurance policy issued to

plaintiff, the respondent insurance company is entitled to be subrogated to the rights of plaintiff in the sum of $1,000.00, which sum represents the payment made to plaintiff pursuant to the medical payments provision of the policy. Respondent insurance company contends that the unambiguous language of the policy, plus the language of the "loan receipt agreement", clearly exemplify the fact that respondent is entitled to recoup the $1,000 payment.

Conversely, plaintiff asserts that the trial judge correctly construed the language of the insurance contract in awarding plaintiff the $1,000.00 and to do otherwise would be to do violence to the avowed public policy against the assignment of claims.

A careful examination of the terms of the policy discloses the following provisions which are relevant to our determination of the question presented:

"4. Subrogation. Upon payment under this policy, except under coverages C, M, S, and T, the company shall be subrogated to all the *insured's* rights of recovery thereof and the *insured* shall do whatever is necessary to secure such rights and do nothing to prejudice them.

"Upon payment under coverages C and M of this policy the company shall be subrogated to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery which the injured *person* or anyone receiving such payment may have against any *person* or organization and such *person* shall execute and deliver instrument and papers and do whatever else is necessary to secure such rights. Such *person* shall do nothing after loss to prejudice such rights.

"5. Trust Agreement—Coverages C, M, and U. In the event of payment to any *person* under coverage C, M or U:

(a) the company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such *person* against any *person* or organization because of the damages which are the subject of claim made under the coverages;"

The above quoted provisions distinctly delineate the respondent insurance company's right to subrogation when medical

payments are made to the insured pursuant to Coverage C of the policy. See, 4 Strong, N. C. Index 2d, Insurance, § 6, p. 461. Furthermore, the respondent insurance company's position is bolstered by making reference to the written agreement between the insurer and insured which is entitled "Loan Receipt Under Medical Payments Coverage". This paper writing states in pertinent part:

> "The undersigned hereby acknowledges receipt from the State Farm Mutual Automobile Insurance Company of the sum of $1,000.00 (One Thousand and No/100) as a loan without interest under Policy No. 1844593B2242A repayable only in the event and to the extent that any net recovery is made by the undersigned from any person or persons, corporation or corporations, or other parties, on account of personal injuries sustained in an accident which occurred on or about the 24 day of Jan., 1970 . . . . "

Thus, the insurance company having paid $1,000.00 to the insured under Coverage C (the medical payments coverage) of the policy and the insured having obtained a recovery of $9,000.00 by way of a consent judgment, it follows under the provisions of the insurance contract stated *supra* that the respondent insurance company is entitled to be subrogated to the extent of $1,000.00.

In arriving at this decision, we necessarily reject plaintiff's contention that the subrogation provision in the policy is tantamount to an assignment of a personal injury claim and as such is void as against public policy. The facts of this case plainly disclose that the respondent insurance company is simply attempting to recover a payment made in accordance with the terms of the policy. An attempt to designate this as constituting an assignment of a claim is feckless. See, *Wilson v. Tennessee Farmers Mutual Insurance Company*, 219 Tenn. 560, 411 S.W. 2d 699 (1966), where it is said:

> "Subrogation means substitution, not assignment or transfer. Subrogation operates only to secure contribution and indemnity; whereas, an assignment transfers the whole claim . . . .

> " * * * Generally, parties may contract as they wish and we cannot see that it is against public policy for the parties to contract for subrogation of medical payments.

---

Carver v. Mills

---

To hold otherwise would permit an injured plaintiff to recover twice for the same medical expenses. This should not be permitted."

The judgment of the trial court is

Reversed.

Judges CAMPBELL and PARKER concur.