No error.

---

NORTH CAROLINA BAPTIST HOSPITALS, INC. v. BEVERLY R. MITCHELL

No. 34PA88

(Filed 8 December 1988)

**Attorneys at Law § 3.1; Hospitals § 1; Physicians, Surgeons and Allied Professions § 10— medical services—assignment of personal injury settlement—disbursement of funds—attorney's failure to honor assignment**

An attorney who follows the disbursement provisions of N.C.G.S. § 44-50 when disbursing a client's funds from a personal injury settlement cannot be held liable for the client's unpaid debt to a medical service provider who the attorney knew had obtained the client's assignment of all such funds up to the full amount of the client's debt for medical services. In order to ensure that injured parties will retain the incentive to pursue their claims, the legislature intended to provide in N.C.G.S. § 44-50 that the injured party receive some part of the amount recovered for his injury by requiring third parties receiving funds for a personal injury claim to pay no more than 50 percent of the amount recovered, exclusive of attorneys' fees, to service providers.

Justice MEYER dissenting.

Justices WEBB and WHICHARD join in this dissenting opinion.

Justice WHICHARD dissenting.

Justices MEYER and WEBB join in this dissenting opinion.

ON discretionary review of the decision of the Court of Appeals, 88 N.C. App. 263, 362 S.E. 2d 841 (1987), which affirmed judgment dismissing the plaintiff's action entered by *Harrill, J.,* on 16 January 1987, in District Court, FORSYTH County. Heard in the Supreme Court on 13 October 1988.

*Turner, Enochs, Sparrow, Boone & Falk, P.A., by Wendell H. Ott and Thomas E. Cone, for the plaintiff appellant.*

*Henson, Henson, Bayliss & Coates, by Paul D. Coates and Perry C. Henson, for the defendant appellee.*

*Lacy H. Thornburg, Attorney General, by John R. Corne, Henry T. Rosser, and J. Charles Waldrup, Assistant Attorneys General, for The Division of Vocational Rehabilitation Services and Division of Medical Assistance of the North Carolina Department of Human Resources and The North Carolina Memorial Hospital, amici curiae.*

MITCHELL, Justice.

The facts are essentially undisputed in this case. The record reveals that Henry L. Clark was treated at North Carolina Baptist Hospitals, Inc. (hereinafter "the hospital") for injuries he sustained in an automobile accident. Total charges for the medical services he received from the hospital amounted to $27,579.69. Clark executed an assignment[1] to the hospital of all amounts he

---

1. The assignment read as follows:

   In consideration of services ʰrendered and/or services to be rendered by North Carolina Baptist Hospitals, Inc. ("Hospital") to Henry Clark ("Patient"), the undersigned hereby assign to the Hospital all right, title and interest in and to any compensation or payment in any form that (I, -we-) have received or shall receive as a result of or arising out of the injuries sustained by the Patient resulting in (his, -her-) hospitalization, up to the amount necessary to discharge all indebtedness to the Hospital for medical services rendered to the Patient, whenever and wherever rendered. (I, -We-) agree that this Assignment shall not relieve (me, -us-) of any such indebtedness until actually paid. This Assignment is irrevocable and made without prejudice to any rights that (I, -we-) might have to compensation for injuries incurred by the Patient, but (I, -we-) hereby authorize and direct

had "received or shall receive as a result of" his injuries, up to the amount necessary to satisfy his indebtedness to the hospital.

Clark retained the defendant, Beverly R. Mitchell, Esq., as counsel to represent him in his personal injury claim against the driver of the other automobile involved in the accident which caused his injury. The defendant Mitchell received copies of Clark's assignment in favor of the hospital. Thereafter, she settled Clark's claim for $25,000.00, the limit of the other driver's liability insurance policy.

Pursuant to N.C.G.S. § 44-50,[2] Mitchell caused the funds she had received to be distributed as follows: $6,250.00 to herself for legal fees, $5,812.50 to the hospital for medical bills, $3,562.50 for other medical bills, $45.00 to David Martin for investigative work, and the balance of $9,330.00 to Clark. The hospital later obtained a default judgment against Clark for the entire amount of its medical charges plus costs and interest. The hospital received the $5,812.50 paid to it from the funds the defendant had received on behalf of her client Clark, but the balance of the judgment against Clark remained unsatisfied. Consequently, the plaintiff hospital brought this action against the defendant Mitchell seeking damages for her failure to honor the assignment executed by Clark.

---

any person or corporation having notice of this Assignment to pay to the Hospital directly the amount of the indebtedness owed to the Hospital in connection with services rendered to the Patient. (I, -We-) further authorize and direct any person or corporation making such payments to the Hospital to accept and rely upon a written statement from the Hospital as to the amount of such indebtedness.

2. N.C.G.S. § 44-50 states:

Such a lien as provided for in G.S. 44-49 shall also attach upon all funds paid to any person in compensation for or settlement of the said injuries, whether in litigation or otherwise: and it shall be the duty of any person receiving the same before disbursement thereof to retain out of any recovery or any compensation so received a sufficient amount to pay the just and bona fide claims for such drugs, medical supplies, ambulance service and medical attention and/or hospital service, after having received and accepted notice thereof: Provided, that evidence as to the amount of such charges shall be competent in the trial of any such action: Provided, further, that nothing herein contained shall be construed so as to interfere with any amount due for attorney's services: Provided further, that the lien hereinbefore provided for shall in no case, exclusive of attorneys' fees, exceed fifty percent (50%) of the amount of damages recovered.

Upon timely motion by the defendant pursuant to N.C.G.S. § 1A-1, Rule 41(b), the trial court entered judgment dismissing the plaintiff's action. The plaintiff appealed to the Court of Appeals which affirmed the judgment of the trial court. We allowed discretionary review by order entered on 6 April 1988.

The only issue before us is whether an attorney who follows the disbursement provisions of N.C.G.S. § 44-50 when disbursing a client's funds from a personal injury settlement can be held liable for the client's unpaid debt to a medical service provider whom the attorney knew had obtained the client's assignment of all such funds up to the full amount of the client's debt for medical services. Although the dissenters discuss other interesting questions, we consider that issue only and conclude that an attorney cannot be held liable for following the statute in such situations. Accordingly, we affirm the decision of the Court of Appeals.

Noting that a purported assignment of a claim for relief for personal injury is invalid as contrary to public policy, the Court of Appeals focused on the question of whether there is a difference between the assignment of such a *claim* and the assignment of *proceeds* resulting from the claim. That court concluded that any distinction drawn between the assignment of a claim and the assignment of the proceeds of the claim is a mere fiction; therefore, such an assignment of proceeds is a violation of public policy and invalid. After concluding that the assignment was invalid, the Court of Appeals went on to hold that the defendant had complied with the provisions of N.C.G.S. § 44-50 in disbursing the funds she received in settlement of her client's personal injury claim and could not be held liable to the plaintiff hospital. We affirm the decision of the Court of Appeals, but for different reasons.

The plaintiff contends that the Court of Appeals erred in concluding that Clark's assignment of the proceeds of his personal injury claim was invalid. The plaintiff maintains that neither N.C.G.S. § 44-50 nor its companion, N.C.G.S. § 44-49, contains any language which suggests that they provide the exclusive means of recovery of medical expenses where a personal injury claim is involved. Furthermore, argues the plaintiff, these statutes do not contain any language which suggests the invalidity of an assignment made independently of the statutes.

The defendant concedes that a hospital may be able to recover from its own patient for the cost of medical services, independent of the lien statutes. The defendant argues, however, that while the lien statutes may not provide the exclusive method for recovery of medical expenses from an injured party where a personal injury claim or the proceeds of such a claim are involved, N.C.G.S. § 44-50 provides the only mechanism by which to obtain funds from an attorney who has received them for a client in satisfaction of a personal injury claim. We agree.

We conclude that in this case Clark's attorney cannot be held liable to the hospital for failing to honor the assignment. The intent of the legislature controls the interpretation of a statute. *State v. Hart*, 287 N.C. 76, 213 S.E. 2d 291 (1975). When the language of a statute is clear and unambiguous, the courts must give the statute its plain and definite meaning; but where a statute is ambiguous or unclear in its meaning, the courts must interpret the language to give effect to the legislative intent. *In Re Banks*, 295 N.C. 236, 239, 244 S.E. 2d 386, 388-89 (1978). A construction of a statute which operates to defeat or impair the object of the statute must be avoided if that can reasonably be done without doing violence to the legislative language. *State v. Hart*, 287 N.C. at 80, 213 S.E. 2d at 295.

A pertinent part of N.C.G.S. § 44-50 reads as follows:

[I]t shall be the *duty* of any person receiving . . . [funds paid for another as satisfaction of a claim for personal injuries] before disbursement thereof to retain out of any recovery or any compensation so received a sufficient amount to pay the just and bona fide claims for such drugs, medical supplies, ambulance service and medical attention and/or hospital service, after having received and accepted notice thereof . . . Provided, further, that the lien hereinbefore provided for shall in no case, exclusive of attorneys' fees, exceed fifty percent (50%) of the amount of damages recovered.

(Emphasis added.) This portion of the statute defines the duty of "any person receiving" the funds paid in settlement or compensation of a personal injury claim of another. Although the statute does not make it clear, we conclude that by directing third parties as to how to disburse funds received for personal injury claims and limiting the percentage of the balance of the recovery — after

deducting attorneys' fees—to be paid to those benefitted by the statute, the legislature intended that such third parties pay no more than fifty percent of any such balance to service providers.

Our interpretation of the statute comports with the well established public policy of this state favoring settlements of claims. *See Fisher v. Lumber Co.*, 183 N.C. 485, 111 S.E. 857 (1922); *Carding Specialists v. Gunter and Cooke*, 25 N.C. App. 491, 214 S.E. 2d 233 (1975). An injured party's right to actually take a share of settlement proceeds from a third party who receives them on his behalf provides at least some incentive for him to set-tle his claim. If an injured party knows that he will never receive any money in compensation, however, he very well may refuse to settle or simply lose interest and fail to exert any effort to do so. In such a situation the hospital and other health care providers will often find themselves left without any compensation for their services. We believe that our interpretation of N.C.G.S. § 44-50 increases the likelihood that such health care providers will receive at least some compensation as a result of their patient having prevailed in an action for the personal injury for which the care was provided.

The plaintiff's argument that the plain language of N.C.G.S. § 44-50 does not prevent an assignment of proceeds of a personal injury claim received by a third party is not unreasonable. When read quite literally, the statute may be so construed. However, where a literal interpretation of the language of a statute would contravene the manifest purpose of the statute, the reason and purpose of the law will be given effect and the strict letter of the statute disregarded. *In Re Banks*, 295 N.C. at 240, 244 S.E. 2d at 389. Here, a strictly literal interpretation would contravene the intent of the legislature which we believe was, in part, to provide that the injured party receive some part of the amount recovered for his injury by requiring third parties receiving funds paid for a personal injury claim to pay no more than fifty percent of the amount recovered, exclusive of attorneys' fees, to service pro-viders.

The defendant in this case received the funds from the settle-ment on behalf of her client Clark and disbursed them according to the statute. Therefore, she is not liable to the plaintiff hospital for failing to pay the hospital in accord with the terms of her

client's assignment, because her obligation was to follow the statutory formula for distribution of such funds.

For the foregoing reasons, which differ from those given by the Court of Appeals, we conclude that the Court of Appeals was correct in affirming the trial court's judgment dismissing the plaintiff's claim. The decision of the Court of Appeals is, therefore, affirmed.

Affirmed.

Justice MEYER dissenting.

While it is clear that we have done so implicitly, this Court should very explicitly disavow the holding of the Court of Appeals in this case to the effect that any distinction drawn between the assignment of a claim of personal injuries and the assignment of the proceeds of such a claim is a "mere fiction," and therefore an assignment of proceeds is a violation of public policy and thus invalid.

The Court of Appeals was quite correct in holding that a raw claim or the cause of action itself is not assignable. "It seems that few legal principles are as well settled, and as universally agreed upon, as the rule that the common law does not permit assignments of *causes of action* to recover for personal injuries." Annot. "Assignability of claim for personal injury or death," 40 A.L.R. 2d 500, 502 (1955) (emphasis added). However, courts have drawn a distinction between an assignment of the claim or cause of action itself and an assignment of the proceeds of whatever recovery is had from a settlement or an action by the claimant against the tort-feasor. *Id.* at 512; Annot. "Assignability of proceeds of claim for personal injury or death," 33 A.L.R. 4th 82, 88 (1984).

There are very substantial differences between an assignment of a raw claim or cause of action for a personal injury action and the assignment of the proceeds which might be derived from the claim by settlement or by judgment. In an assignment of a raw claim or cause of action for personal injuries, the claimant loses all control of the conduct of settlement negotiations, the right to bring an action against the tort-feasor in his own name, the right to control the litigation, and the right to control the settlement of the lawsuit. This is not true if only the *proceeds* of a claim are assigned.

The important differences between the assignment of the claim and an assignment of the proceeds simply cannot be reasonably adjudged "mere fiction."

We should particularly disavow the statement of the panel below to the effect that the "more reasoned view is that [proceeds of a personal injury claim] are not assignable before judgment," 88 N.C. App. 263, 266, 362 S.E. 2d 841, 843, because the assignment of proceeds is virtually always executed "before judgment."

The majority also errs in concluding that the manifest purpose of the statute is to provide that the claimant shall receive at least a part of any recovery for his injuries. The manifest purpose of the statute in question is to create a lien on the proceeds of the personal injury recovery in the hands of a third person. The statute in no way addresses the public policy question of the right of a person to contract for the disposition of proceeds for the purpose of securing (or reimbursing for) badly needed medical care. Had the legislature chosen to address this public policy question, it would no doubt have specifically authorized such an assignment of proceeds in order to assist injured people in obtaining immediate medical treatment for their personal injuries. If the law did not permit such assignments, we would no doubt see injured parties turned away or at least shuttled out to other treatment facilities, as we now see in the case of indigents. Public policy favors the assignment of proceeds to medical care providers. For a review of numerous cases approving assignments of proceeds to pay hospitals and doctors for medical services, see Annot. "Assignability of proceeds of claim for personal injury or death," 33 A.L.R. 4th 82, 100 (1984).

The United States District Court for the Western District of Virginia, applying Virginia law, examined and upheld as valid an assignment virtually identical to the one in this case. *In re Musser*, 24 Bankr. 913 (W.D. Va. 1982), involved an assignment to a hospital of proceeds which might arise resulting from personal injuries leading to the hospitalization. The court held that this constituted an equitable assignment of a future right which was fully enforceable. In determining that the proceeds of a personal injury action were assignable (at least to the medical care provider), the court relied heavily on the reasoning in *Collins v. Blue Cross of Virginia*, 213 Va. 540, 193 S.E. 2d 782 (1973) (superseded

as to subrogation provisions by statute), which, like *Carver v. Mills*, 22 N.C. App. 745, 207 S.E. 2d 394, *cert. denied*, 285 N.C. 756, 209 S.E. 2d 280 (1974), held that insurers were entitled to assert subrogation claims against subsequent personal injury recoveries. The court noted that the reasons underlying the common law rule against assignment of the cause of action, e.g., the prevention of champerty and maintenance, are absent in the assignment of proceeds. The court observed that the assignment of proceeds differs significantly from an assignment of a cause of action in that the assignment of proceeds is valid only to the extent of the charges for services provided, gives the assignee rights only to proceeds, leaves the debtor in complete control over his personal injury claim, gives the assignee no right to proceed directly against the tort-feasor even if the debtor chooses not to proceed, and gives the assignee no right to force the debtor to proceed against the tort-feasor.

*Block v. California Physicians' Service*, 244 Cal. App. 2d 266, 53 Cal. Rptr. 51 (1966), addressed the same issues in the context of a health insurer's suit for reimbursement out of funds received by its insured through a personal injury action. It is important to note that the insured in that case agreed to reimburse his medical carrier, but the standard "subrogation" language was not used. The agreement merely provided that the insured would "reimburse CPS [California Physicians' Service] to the extent of benefits provided, immediately upon collection of damages by him." *Id.* at 268, 53 Cal. Rptr. at 52. The language is strikingly similar to the assignment in the case at bar.

The law should encourage such assignments rather than discourage them, as the majority has done.

In *Goldwater v. Fisch*, 261 A.D. 226, 25 N.Y.S. 2d 84, *reh'g and appeal denied*, 261 A.D. 1056, 27 N.Y.S. 2d 463 (1941), the hospital brought an action against the attorney based upon his client's assignment of the proceeds of a settlement to cover charges for medical and surgical services. The court held that when the proceeds of the settlement were paid over to the attorney, the equitable title of the hospital for the amount of its claim ripened into legal title, and the attorney, having full knowledge of the hospital's interest, was obligated to pay to the hospital the sum to which it was entitled. If the recipient of

the settlement fund is notified of the assignment, the fact that the recipient has already paid out the funds to the injured party is of no consequence. *See Reddy v. Zurich General Accident & Liability Ins. Co.*, 171 Misc. 69, 11 N.Y.S. 2d 88 (Sup. Ct. 1939).

In *Brinkman v. Moskowitz*, 38 Misc. 2d 950, 238 N.Y.S. 2d 876 (Sup. Ct. 1962), the court held that an attorney who had notice of an assignment to a physician, for medical services rendered, of a portion of the proceeds of his client's claim for personal injuries, was liable to the physician for paying out the moneys in disregard of the assignment.

Another case addressing the identical issues as in the case sub judice is *Bonanza Motors, Inc. v. Webb*, 104 Idaho 234, 657 P. 2d 1102 (Ct. App. 1983), which held that personal injury proceeds held by the successful plaintiff's attorney were subject to the assignment previously executed by the plaintiff to an unrelated third party. The court relied in part upon *Brinkman. Bonanza Motors* also addressed the ethical responsibilities of an attorney in such a situation. The pertinent portions of the Code of Professional Responsibility in effect in Idaho at the time were identical to those in effect in North Carolina at the time of the transaction at issue in this case. Idaho Code of Professional Responsibility DR 9-102(B)(4) provided that an attorney should "promptly pay [to the client] . . . as requested . . . the funds . . . in the possession of the lawyer which the client is entitled to receive." The court in *Bonanza Motors* held that this ethical provision did not act to prevent the attorney from honoring the assignment, since the client in that case was not "entitled to receive" the funds which he had already assigned. *Bonanza Motors*, 104 Idaho at 237, 265 P. 2d at 1105. *See also Topik v. Thurber*, 739 P. 2d 1101 (Utah 1987).

In the case sub judice, copies of the assignment were mailed to the defendant on two different occasions, long before the defendant disbursed any funds. The defendant admitted receiving the two packages containing the assignment and admitted having a copy of the assignment in her files. She was thus charged with the duty of paying funds of her client, up to the amount of the hospital charges, to the hospital-assignee according to the terms of the assignment.

Neither N.C.G.S. § 44-50 nor its companion, N.C.G.S. § 44-49, contains any language which suggests that they provide the ex-

clusive remedy for recovery of medical expenses where a personal injury claim is involved. Nor do they contain any language which suggests the invalidity of an assignment made independently of the statutes.

Had the legislature intended to limit recovery of a medical care provider, as opposed to simply providing a limited lien, it could have done so. There is no doubt that the legislature knows how to draft such language when it chooses to do so. For example, just such a limitation has been imposed upon recovery by a medical care provider out of wrongful death proceeds. That statute unambiguously states that a wrongful death recovery "is not liable to be applied as assets . . . except as to . . . reasonable hospital and medical expenses not exceeding one thousand five hundred dollars ($1,500) incident to the injury resulting in death." N.C.G.S. § 28A-18-2(a) (Cum. Supp. 1988). The statutory sections at issue in this case provide no such limitations nor any basis for the inference of such a limitation.

The majority opinion impacts upon governmental programs as well as medical service suppliers in the private sector. The *amici*, North Carolina Memorial Hospital, the Division of Vocational Rehabilitation Services, and the Division of Medical Assistance (Medicare), will be very severely hampered in their attempts to recoup funds expended from the public treasury. In any personal injury case involving medical expenses, the amount of the bills is taken into account in both settlements and jury verdicts. Because of the collateral source rule, whether or not the bill has been paid is irrelevant in determining the patient's damages. It is patently inequitable for a patient-plaintiff to collect all or a portion of his medical expenses in a personal injury claim and not be required to pay that money to the medical use provider. While the Court of Appeals in the case sub judice found a violation of public policy in assigning proceeds of a cause of action, the court failed to note competing public policy considerations regarding a patient's paying his bill or having the rest of society pay it for him. When the patient has money to pay, it is the better public policy to require the patient to do so. Assignment to a health care provider of the proceeds of a personal injury claim prior to recovery is a good and rational public policy to ensure payment of the medical costs and, in the case of a public medical care provider, to

prevent the taxpayer from directly paying for medical services even though the patient-plaintiff has recovered from third parties.

I believe the majority also errs in its conclusion that being able to retain a part of the settlement for himself is the claimant's only incentive to pursue his claim against the tort-feasor. The overwhelming majority of our citizens want to pay their debts for medical care. Even those who do not are motivated to escape lawsuits and judgments against themselves and the subsequent adverse effect on their credit ratings. It is only a small percentage of our citizens who absolutely do not care that have no incentive other than the lien statute to pursue the tort-feasor, even though all the proceeds would go to pay medical bills.

If an attorney for a patient-plaintiff cannot disburse his client's funds by agreement of the parties and does not wish to choose between the lien statute and his client's valid assignment to the medical care provider, he or she can simply deduct his fees and pay the balance into the court or clerk's office.

Admittedly, the attorney in this case acted completely innocently and in good faith. This Court should not, however, permit these "bad facts" to lure it into making "bad law." I vote to find the assignment valid and enforceable against the defendant-attorney who disbursed the funds with full notice and knowledge of the assignment.

Justices WEBB and WHICHARD join in this dissenting opinion.

Justice WHICHARD dissenting.

Under the common law governing assignments, a litigant may, while an action is pending, assign any recovery he may obtain. The assignee becomes the equitable owner of the claim and is entitled to an assignment of the judgment when it is entered. *Fertilizer Works v. Newbern,* 210 N.C. 9, 185 S.E. 471 (1936). A debtor with notice of an assignment has a duty to make payment to the assignee. *Lipe v. Bank,* 236 N.C. 328, 331, 72 S.E. 2d 759, 761 (1952).

> A valid assignment may be made by any contract between the assignor and the assignee which manifests an intention to make the assignee the present owner of the debt. . . . The

assignment operates as a binding transfer of the title to the debt as between the assignor and the assignee regardless of whether notice of the transfer is given to the debtor. . . . Notice to the debtor is necessary, however, to charge him with the duty of making payments to the assignee. . . . *This duty arises whenever the debtor receives notice of the assignment,* irrespective of who gives it.

*Id.* (citations omitted) (emphasis added).

The record here establishes the following undisputed facts:

For a valuable consideration recited in the document, defendant's client assigned to plaintiff, a health care provider, all sums he might receive as a result of the injuries that caused his hospitalization, up to the full amount necessary to discharge his indebtedness. The assignment "authorize[d] *and directe[d]*" any person with notice of it to pay such sums directly to plaintiff. (Emphasis added.) When defendant received proceeds from her client's claim for personal injuries that were less than the client's indebtedness to plaintiff, she had notice of the assignment.

Applying the foregoing common law principles governing assignments to these undisputed facts, defendant had a duty to pay the funds in question to plaintiff, and plaintiff is entitled to recover from defendant any loss it has incurred on account of plaintiff's breach of this duty. *See Brinkman v. Moskowitz,* 38 Misc. 2d 950, 238 N.Y.S. 2d 876 (Sup. Ct. 1962) (attorney with notice of assignment to plaintiff, for medical services rendered, of a portion of proceeds of client's claim for personal injuries, liable to plaintiff health care provider for loss resulting from payment of sums in disregard of assignment); *Bonanza Motors, Inc. v. Webb,* 104 Idaho 234, 657 P. 2d 1102 (Ct. App. 1983) (law firm liable to client's creditor for funds relinquished to client in violation of assignment to creditor).

The Court of Appeals opinion, in effect, subordinates the foregoing common law principles governing assignments to the principle that rights of action for torts causing personal injuries are not assignable. *See* 6 Am. Jur. 2d *Assignments* § 37 (1963). The Court of Appeals "believe[d] that the more reasoned view is that such proceeds are not assignable before judgment." *N.C. Baptist Hospitals, Inc. v. Mitchell,* 88 N.C. App. 263, 266, 362 S.E.

2d 841, 843 (1987). I disagree. I believe the more reasoned view distinguishes an assignment of the cause of action itself from an assignment of the proceeds of whatever recovery is obtained in an action, and holds the latter enforceable. *See* Annot. "Assignability of Proceeds of Claim for Personal Injury or Death," 33 A.L.R. 4th 82 (1984), and cases collected therein. An assignment of settlement proceeds is an assignment of future property, not an assignment of an existing cause of action. The reasons underlying the common law rule against assignment of tort claims — *viz*, the prevention of champerty and maintenance, or "trafficking in litigation," and the desirability of allowing the injured party to retain control of the lawsuit and any settlement thereof — thus are not implicated. *See In Re Musser*, 24 Bankr. 913 (W.D. Va. 1982). Nothing else appearing, I would reverse the Court of Appeals for these reasons.

The majority here affirms the Court of Appeals, not on the basis of the common law principle against assignment of tort claims, but on the basis of N.C.G.S. § 44-50. This statute limits the lien established for health care providers in N.C.G.S. § 44-49 to fifty percent of the damages recovered in the settlement of a claim for personal injuries, exclusive of attorneys' fees. N.C.G.S. § 44-50 (1984). The majority bases its decision on the speculative assumption that the manifest purpose of this statute is to insure consumers of health care services a sufficient portion of tort claim recoveries that they will retain the incentive to pursue their claims. I again disagree.

"[N.C.G.S. § 44-49, 50] provide rather extraordinary remedies in derogation of the common law, and, therefore, they must be strictly construed." *Ellington v. Bradford*, 242 N.C. 159, 162, 86 S.E. 2d 925, 927 (1955). "By the rule of strict construction . . . is not meant that the statute shall be stintingly or evenly narrowly construed . . . but it means that *everything shall be excluded from its operation which does not clearly come within the scope of the language used." Seminary, Inc. v. Wake County*, 251 N.C. 775, 782, 112 S.E. 2d 528, 533 (1960) (quoting *State v. Whitehurst*, 212 N.C. 300, 303, 193 S.E. 657, 659 (1937) (emphasis added). *See also Harrison v. Guilford County*, 218 N.C. 718, 722, 12 S.E. 2d 269, 272 (1940); *Biddix v. Henredon Furniture Industries*, 76 N.C. App. 30, 34, 331 S.E. 2d 717, 720 (1985). N.C.G.S. § 44-50 does not, by its express terms, require its application to the exclusion of

more extensive common law contractual rights of assignment. By holding, in effect, that it does, the majority reads into the statute a prohibition that does not "clearly come within the scope of the language used." *Seminary, Inc.*, 251 N.C. at 782, 112 S.E. 2d at 533. This is a marked departure from the strict construction of the statute this Court has mandated. *Ellington v. Bradford*, 242 N.C. at 162, 86 S.E. 2d at 927.

Further, while the majority correctly asserts that "[t]he intent of the legislature controls the interpretation of a statute," I am convinced that its interpretation of N.C.G.S. § 44-50 is contrary to the actual legislative intent. "In seeking to discover [legislative] intent, the courts should consider the language of the statute, the spirit of the act, and what the act seeks to accomplish." *Stevenson v. City of Durham*, 281 N.C. 300, 303, 188 S.E. 2d 281, 283 (1972). The statute in question was a Depression Era enactment, passed in 1935. It was entitled "An Act To Create A Lien Upon Recoveries In Civil Actions For Personal Injuries *In Favor Of* Sums Due For Medical Attention And/Or Hospitalization." 1935 N.C. Sess. Laws ch. 121 (emphasis added). The words "in favor of" strongly suggest that the intent of the General Assembly was to provide a new remedy to aid health care providers engaged in the then difficult task of collecting their accounts, not to remove an existing common law right that offered benefits more extensive than those established by the statute. Health care providers almost certainly sought the legislation to establish a floor — not a ceiling — on their recovery from settlement or litigation proceeds in personal injury claims.

I thus am unpersuaded by the reasoning of either the Court of Appeals or the majority here. Because the statute does not expressly abrogate the common law principles governing assignments, I would hold that those principles apply. Those principles, applied to the undisputed facts here, entitle plaintiff to a judgment against defendant as a matter of law. N.C.G.S. § 1A-1, Rule 56 (1983). I thus would reverse the Court of Appeals and remand the case to that court for further remand to the District Court, Forsyth County, for entry of judgment for plaintiff.

I am not unsympathetic with the plight of an attorney caught between the conflicting demands of a client and the client's creditor. When a holder of funds is in doubt as to the validity of con-

flicting claims on those funds, however, the interpleader remedy is available. N.C.G.S. § 1A-1, Rule 22 (1983).

For the reasons expressed, I respectfully dissent.

Justices MEYER and WEBB join in this dissenting opinion.