HARRY J. WEHRLEN AND BESSIE K. WEHRLEN v. AMICA MUTUAL INSURANCE COMPANY

No. 9413SC428

(Filed 21 February 1995)

### Insurance § 436 (NCI4th)— automobile accident in New York —direct payment to medical providers—recovery of medical payments by plaintiffs

The trial court did not err by granting summary judgment for plaintiffs in an action to recover medical expenses resulting from an automobile accident where plaintiff Harry Wehrlen was driving in Utica, New York with plaintiff Bessie Wehrlen as his passenger when they were involved in an accident in which they were not at fault; their policy with defendant was in full force and effect at the time of the accident; there existed at that time in New York a mandatory no-fault insurance law requiring injured parties' insurance companies, regardless of fault, to pay first party benefits for basic economic loss incurred as a result of personal injuries arising out of an automobile accident, including medical services; that law applied to out-of-state insurance companies authorized to transact business in New York whose insureds were injured in New York; defendant paid plaintiff's medical providers directly; and plaintiffs filed an action against defendant under the medical payments coverage of the policy. Under New York law, there is no subrogation right because plaintiffs are not entitled to sue tortfeasors and recover for medical expenses incurred as a consequence of the collision, but it does not necessarily follow that permitting plaintiffs to recover under the medical payments provisions of the policy, even if it amounts to double recovery, is inconsistent with a proper construction of the policy. A reasonable person in the position of the insured would have understood the medical payments coverage of the policy to require defendant to pay the insured for medical expenses arising out of an automobile collision except in those

WEHRLEN v. AMICA MUT. INS. CO.

[118 N.C. App. 64 (1995)]

situations listed in the exclusions in the policy, which did not include incurring medical expenses in a state which required the insurer to pay medical expenses directly to the provider. If defendant had wished to provide only medical payments coverage in excess of medical coverage mandated by another state's law, it could and should have done so. The medical payments coverage in this policy, for which plaintiff paid an extra premium, was not included in the limitations for coverage in the section for out-of-state coverage concerning mandatory liability coverage, and New York's proposed no-fault endorsement does not mandate inclusion of the endorsement.

**Am Jur 2d, Automobile Insurance §§ 287 et seq.**

Appeal by defendant from order entered 25 January 1994 in Columbus County Superior Court by Judge William C. Gore, Jr. Heard in the Court of Appeals 24 January 1995.

*William E. Wood for plaintiff-appellees.*

*Patterson, Dilthey, Clay & Bryson, L.L.P., by Stuart L. Egerton, for defendant-appellant.*

GREENE, Judge.

Amica Mutual Insurance Company (Amica) appeals from an order entered 25 January 1994 in Columbus County Superior Court, granting summary judgment in favor of Harry J. Wehrlen and Bessie K. Wehrlen (plaintiffs) in their action to recover from Amica medical expenses resulting from an automobile accident and ordering that plaintiffs recover $20,653.54 plus interest and court costs.

The undisputed facts are as follows: On 1 May 1992, plaintiffs purchased from Amica a North Carolina Personal Auto Policy (the Policy), No. 930532-3042. Part A of the Policy provides for liability coverage for bodily injury or property damage, and Part B of the Policy provides for medical payments coverage for which plaintiffs paid an additional premium. Part A for liability coverage contains an out-of-state coverage section which provides "[n]o one will be entitled to duplicate payments for the same elements of loss." Part B, the medical payments coverage, which has a limit of liability of $50,000.00 for each person per accident, and Part F, the general provisions addressing the entire Policy, provide in pertinent part:

**WEHRLEN v. AMICA MUT. INS. CO.**

[118 N.C. App. 64 (1995)]

PART B—MEDICAL PAYMENTS COVERAGE

We will pay reasonable expenses incurred for necessary medical and funeral services because of **bodily injury**:

1. Caused by accident; and

2. Sustained by an **insured**

. . . . .

PART F—GENERAL PROVISIONS . . .

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right . . .

However, our rights in this paragraph do not apply under:

1. Parts B.; and

2. Part D. . . .

Part B for medical payments coverage also lists eleven exclusions, none of which are applicable in this case.

On 29 September 1992, Harry Wehrlen was driving in Utica, New York, with Bessie Wehrlen as his passenger, when they were involved in an automobile accident. It was determined plaintiffs were not at fault. Plaintiffs both suffered injuries from the accident and incurred medical expenses in the amount of $11,485.91 for Harry Wehrlen and $9,167.63 for Bessie Wehrlen. At the time of the accident, the Policy was in full force and effect, and plaintiffs had paid all premium payments due under the terms of the Policy.

At the time of the accident, there existed in New York the Comprehensive Motor Vehicle Insurance Reparations Act (the Act) which is a mandatory no-fault insurance law requiring injured parties' insurance companies, regardless of fault, to pay first party benefits for basic economic loss incurred as a result of personal injuries arising out of an automobile accident. *See* N.Y. Insurance Law [hereinafter N.Y. Law] §§ 5102, 5103, 5107 (McKinney 1985). Basic economic loss includes "up to fifty thousand dollars per person" for all necessary expenses incurred for "medical, hospital, surgical, nursing, dental, ambulance, x-ray, prescription drug and prosthetic services . . . ." N.Y. Law § 5102(a)(1) (McKinney Supp. 1995). The Act applies to out-of-state insurance companies authorized to transact business in New York, which includes Amica, whose insureds are injured in an automobile accident in New York. N.Y. Law § 5107.

**WEHRLEN v. AMICA MUT. INS. CO.**

[118 N.C. App. 64 (1995)]

Under the Act, the New York Insurance Department promulgated regulations approving use of a "Mandatory Personal Injury Protection (PIP) Endorsement." The proposed endorsement states "[i]f motor vehicle medical payments coverage . . . are afforded under this policy, such coverages shall be excess insurance over any Mandatory PIP . . . paid or payable . . . under this or any other motor vehicle no-fault insurance policy." N.Y. Ins. Dep't Regs. § 65.12. In other words, under the proposed endorsement, an insurance company issuing a policy of insurance containing medical payments coverage would be responsible under that particular coverage only to the extent the cost of the medical services exceeded payments made under the mandatory no-fault New York law.

Amica received billing from plaintiffs' medical providers and made payments directly to the medical providers in accordance with New York's mandatory no-fault law. Amica paid the medical providers a total of $11,485.91 for Mr. Wehrlen and a total of $9,167.63 for Mrs. Wehrlen. These payments were for basic economic loss as defined under New York law.

Plaintiffs pursued a bodily injury claim against the driver of the other vehicle involved in the accident, and that claim was settled. Such settlement did not include payment for plaintiffs' medical expenses. On 30 June 1993, plaintiffs filed an action against Amica in Columbus County Superior Court, alleging entitlement to $11,485.91 for Mr. Wehrlen and $9,167.63 for Mrs. Wehrlen under the medical payments coverage of the Policy. In its answer, Amica argued that the sums allegedly owed under the medical payments coverage of the Policy have "been fully paid and satisfied" by Amica "by payment of the medical services statements directly to the providers" as required by New York law.

On 10 January 1994, plaintiffs made a motion for summary judgment and submitted affidavits in support of their motion. On 25 January 1994, Amica made a motion for summary judgment and submitted the affidavit of Tracy S. Engelbert, a supervising adjuster in Amica's claims department, in support of its motion. The trial court granted summary judgment in favor of plaintiffs.

---

The issue presented is whether an insurance company which issues an automobile liability policy in North Carolina containing medical payments coverage is required to pay to its insured the cost of medical expenses incurred by the insured as the consequence of

the operation of the insured vehicle in another state even though the insurance company has previously paid, pursuant to the laws of that state, the medical providers for the insured's medical expenses.

Amica argues in its brief that to require it to pay to plaintiffs the amount of the medical expenses incurred by them as a result of the New York accident after it has already made payment to the providers of the medical services pursuant to New York law amounts to an "illogical windfall" or "double recovery" for plaintiffs and thus should not be allowed. Plaintiffs, on the other hand, argue that because Amica waived in the Policy its subrogation rights with regard to the medical payments coverage provision, the insured is entitled to recover the cost of medical expenses related to the accident both from the medical payments insurer and the tortfeasor. *See Carver v. Mills*, 22 N.C. App. 745, 207 S.E.2d 394 (insured not entitled to recover under medical payments provision of his own policy and from tortfeasor where policy specifically granted subrogation rights to insurance company), *cert. denied*, 285 N.C. 756, 209 S.E.2d 280 (1974).

There are problems with the arguments of both parties. The plaintiffs' argument is flawed because under New York law, where this collision occurred, there is no subrogation right because plaintiffs (the injured party) are not entitled to sue the tortfeasor and recover for medical expenses incurred as a consequence of the collision. N.Y. Law § 5104(a) (in action by covered person against another covered person for personal injuries arising out of negligence in use of automobile, there is no right of recovery for basic economic loss up to $50,000); *see Country-Wide Ins. Co. v. Osathanugrah*, 465 N.Y.S.2d 26 (except where law creates cause of action, no-fault legislation reflects public policy making insurer of first party benefits absorb economic impact of loss without resort to reimbursement from its insured or by subrogation, from tortfeasor), *aff'd*, 466 N.E.2d 163 (1983). Thus, even if Amica had not waived its subrogation rights under the medical payments provision, there could be no subrogation in this case. As for Amica's argument, it does not necessarily follow that permitting plaintiffs to recover under the medical payments provisions, even if it amounts to a "double recovery," *see Baxley v. Nationwide Mut. Ins. Co.*, 334 N.C. 1, 430 S.E.2d 895 (1993) (insurer not entitled to credit against uninsured motorist coverage for $10,000 it paid plaintiff under medical payments section of same policy because contract itself provides for recovery under both sections and

waives any right to subrogation), is inconsistent with a proper construction of the Policy.

In construing this contract, our objective is "to arrive at the insurance coverage intended by the parties when the policy was issued," *Trust Co. v. Insurance Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970), and to the extent there are any ambiguities, provide a "construction which a reasonable person in the position of the insured would have understood it to mean." *Grant v. Emmco Ins. Co.*, 295 N.C. 39, 43, 243 S.E.2d 894, 897 (1978). Any exclusions or limitations in the Policy are to be construed strictly to provide coverage which would otherwise be afforded by the Policy. *Trust Co.*, 276 N.C. at 355, 172 S.E.2d at 522-23.

In our opinion, a "reasonable person in the position of the insured" would have understood the medical payments coverage to require Amica to pay the insured for medical expenses arising out of an automobile collision except in those situations listed in the "exclusions" named in the policy. The incurring of medical expenses arising out of an automobile collision in a state which requires the insurer to pay the medical expenses, up to $50,000, directly to the provider is not within any of the listed exceptions. Furthermore, had Amica wished to only provide medical payments coverage in excess of medical coverage mandated by another state's law, it could and should have done so, *Mazza v. Medical Mut. Ins. Co.*, 311 N.C. 621, 319 S.E.2d 217 (1984) (if insurer intended to exclude coverage for punitive damages, should have inserted provision stating "this policy does not include recovery for punitive damages"), and its failure to do so now bars its attempt to deny coverage.

Amica also argues that the statement "[n]o one will be entitled to duplicate payments for the same element of loss" contained in Part A, the liability coverage of the Policy, applies to Part B, the medical payments coverage of the Policy, to prevent double recovery for plaintiffs. Amica also argues in its brief that the terms contained in the endorsement form issued by the New York Insurance Department in its regulations becomes part of the Policy; therefore, the medical payments coverage in the Policy is excess coverage, and plaintiffs are not entitled to recover from Amica under the medical payments coverage provision of the Policy. We disagree.

Under the principles of construing an insurance policy which we have already stated, the limitations for coverage in the section for out-of-state coverage in Part A of the Policy do not apply to the sepa-

rate section of Part B for medical payments coverage. Part A is the liability coverage which is a mandatory portion of the Policy under N.C. Gen. Stat. § 20-279.1 et. seq., the Motor Vehicle Safety and Financial Responsibility Act. Part B, on the other hand, is a separate optional contractual coverage for which plaintiffs pay an extra premium. There is also no support for Amica's contention that the provisions in the New York Insurance Department's proposed endorsement are necessarily included in and made a part of plaintiffs' policy. New York's no-fault law simply mandates every insurer authorized to transact business within New York to include coverage to satisfy certain financial security requirements and provide mandatory coverage for non-resident motorists. It does not mandate inclusion of the endorsement in the policy of insurance. For these reasons, the decision of the trial court is

Affirmed.

Judges EAGLES and WALKER concur.