IN THE MATTER OF: THE APPEAL OF LEE MEMORY GARDENS, INC. FROM THE APPRAISAL OF CERTAIN REAL PROPERTY BY THE LEE COUNTY BOARD OF EQUALIZATION AND REVIEW FOR THE TAX YEAR 1990

No. 9210PTC485

(Filed 15 June 1993)

1. **Taxation § 25.11 (NCI3d) — appeal from Property Tax Commission — scope of review**

   The scope of review in cases that have been appealed from the Property Tax Commission is the same as under the Administrative Procedure Act. The Commission's findings of fact are conclusive if, upon review of the whole record, they are supported by competent, material, and substantial evidence. A *de novo* review is applied to review the Commission's statutory interpretation.

   **Am Jur 2d, State and Local Taxation §§ 810-816.**

2. **Taxation § 25.4 (NCI3d) — ad valorem taxes — cemetery — undeveloped land — not exempt**

   The Property Tax Commission did not err by ruling that 7.14 acres of undeveloped land held by a corporation licensed to operate a perpetual care cemetery was not tax exempt.

Although the taxpayer contended that the distinction in N.C.G.S. § 105-278.2(a) between real property "set apart for burial purposes" and property held for purposes of "sale" should be interpreted as distinguishing between the undeveloped property in the cemetery and the property which has been platted and developed for burial purposes, the land has been irrevocably dedicated for use exclusively as a cemetery under the North Carolina Cemetery Act and the taxpayer is not holding the undeveloped land for its burial. The taxpayer can only be holding the land for the purposes of sale to others as burial sites and it is not tax exempt under N.C.G.S. § 105-278.2.

**Am Jur 2d, State and Local Taxation § 390.**

3. **Taxation § 25.4 (NCI3d) — ad valorem taxes — undeveloped cemetery property — method of valuation — findings of Commission supported by evidence**

Although the taxpayer contended that the Property Tax Commission erred in approving the appraisal method used by the County when it valued the taxpayer's undeveloped cemetery property, the findings of the Property Tax Commission were supported by competent, material, and substantial evidence and the taxpayer thus failed to prove that the valuation was substantially greater than the true value. N.C.G.S. § 105-345.2(c).

**Am Jur 2d, State and Local Taxation § 390.**

4. **Constitutional Law § 92 (NCI4th) — ad valorem taxation — cemeteries — no evidence of discrimination in valuation**

There was no evidence of discrimination against the taxpayer in the 1990 valuation of its cemetery property where there was no evidence that another commercial cemetery cited by the taxpayer owns undeveloped land, as does the taxpayer, the County assessed burial sites in the other cemetery at the same value as the taxpayer's, and, although unsold mausoleum crypts were assessed at a different value, there was evidence that the taxpayer's mausoleum crypts were of a better quality.

**Am Jur 2d, Constitutional Law §§ 784-910; State and Local Taxation §§ 170 et seq.**

Appeal by taxpayer Lee Memory Gardens, Inc. from the final decision of the North Carolina Property Tax Commission entered

IN RE APPEAL OF LEE MEMORY GARDENS

[110 N.C. App. 541 (1993)]

24 February 1992 by Vice-Chairman John A. Cocklereece. Heard in the Court of Appeals 15 April 1993.

Lee Memory Gardens, Inc. (the "Taxpayer") is a corporation licensed to operate a perpetual care cemetery under the North Carolina Cemetery Act, N.C. Gen. Stat. §§ 65-46 to 65-73. Taxpayer is appealing the assessed valuation of its 14.14 acre tract of land (the "Tract") for *ad valorem* taxes effective 1 January 1990.

In 1990, the Lee County Assessor assessed a total valuation to the Tract of $171,500 for *ad valorem* tax purposes, broken down into the following valuations: (1) $2,500 per acre for the 7.14 undeveloped, unplotted acres for a total valuation of $17,900; (2) $2,500 per acre for the 1,216 unsold burial sites consisting of 1.40 acres, amounting to a total valuation of $3,500; (3) $927 for each of the 162 unsold crypts, amounting to a total valuation of $150,100.

Subsequently, the Lee County Board of Equalization and Review (the "Board") declined to reduce this assessment value upon Taxpayer's petition. From the Board's decision, the Taxpayer appealed to the North Carolina Property Tax Commission (the "Commission"). On 24 February 1992, the Commission entered a Final Decision affirming the Board's decision. From this decision, the Taxpayer appeals.

*County Attorney Kenneth R. Hoyle, Sr. for appellee Lee County.*

*Heman R. Clark for appellant Lee Memory Gardens, Inc.*

ORR, Judge.

The 14.14 acre tract of land at issue in this case has been irrevocably dedicated for use exclusively as a cemetery under the North Carolina Cemetery Act. Thus, no part of the Tract can be sold, mortgaged or used except for human burial. Of this tract, 7.14 acres are unplotted, undeveloped land, not being offered for sale or use as burial sites. Additionally, as of 1 January 1990, there were 1,216 unsold burial sites plotted and marked off with landscaping and access driveways. In 1989, the Taxpayer added a mausoleum with 288 crypts at a cost of $154,080, of which 126 were pre-sold. As of 1 January 1990, 162 crypts remained unsold.

I.

[1] At the outset, we note that our scope of review in cases that have been appealed from the Commission is determined by

IN RE APPEAL OF LEE MEMORY GARDENS

[110 N.C. App. 541 (1993)]

N.C. Gen. Stat. § 105-345.2. "This procedure for review is the same as that under the Administrative Procedure Act, Chapter 150B (formerly Chapter 150A)." *In re Appeal of General Tire*, 102 N.C. App. 38, 39, 401 S.E.2d 391, 393 (1991). G.S. § 105-345.2 states in pertinent part:

> (b) So far as necessary to the decision and where presented, the court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning and applicability of the terms of any Commission action. The court may affirm or reverse the decision of the Commission, declare the same null and void, or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:
>
> > (1) In violation of constitutional provisions; or
> >
> > (2) In excess of statutory authority or jurisdiction of the Commission; or
> >
> > (3) Made upon unlawful proceedings; or
> >
> > (4) Affected by other errors of law; or
> >
> > (5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted; or
> >
> > (6) Arbitrary or capricious.
>
> (c) In making the foregoing determinations, the court shall review the whole record or such portions thereof as may be cited by any party and due account shall be taken of the rule of prejudicial error. The appellant shall not be permitted to rely upon any grounds for relief on appeal which were not set forth specifically in his notice of appeal filed with the Commission.

"An appellate court may not, however, 'substitute its judgment for that of the agency when two reasonable conflicting results could be reached. . . .' " *In re Appeal of Foundation Health Sys. Corp.*, 96 N.C. App. 571, 574, 386 S.E.2d 588, 589 (1989), *disc. review allowed*, 326 N.C. 800, 393 S.E.2d 897 (1990), *review dismissed by*, 328 N.C. 322, 401 S.E.2d 358 (1991) (citation omitted). "On appeal, our review is limited to a determination of whether the decision

is supported by substantial evidence, in view of the 'entire record' as submitted." *General Tire*, 102 N.C. App. at 40, 401 S.E.2d at 393 (citations omitted).

The Commission's "findings of fact are conclusive if, upon review of the whole record, they are supported by competent, material, and substantial evidence." *In re Humana Hosp. Corp. v. North Carolina Dep't of Human Resources*, 81 N.C. App. 628, 633, 345 S.E.2d 235, 238 (1986) (applying former Chapter 150A which is now recodified as Chapter 150B). We apply a *de novo* review, however, to our review of the Commission's statutory interpretation, as "[i]ncorrect statutory interpretation by [the Commission] constitutes an error of law. . . ." *Brooks v. Rebarco, Inc.*, 91 N.C. App. 459, 464, 372 S.E.2d 342, 345 (1988) (applying N.C. Gen. Stat. § 150B-51(b) ).

II.

[2]    In the present case, the Taxpayer has raised three issues for our review. The first issue relates to whether the Commission erred in ruling that the 7.14 acres of undeveloped land was not exempt from taxation as of 1 January 1990, pursuant to N.C. Gen. Stat. § 105-278.2. The second issue relates to the valuation method employed by the County Assessor. The third issue relates to whether the County unconstitutionally discriminated against the Taxpayer in its valuation of the undeveloped tract of land. We begin by addressing the Taxpayer's arguments under N.C. Gen. Stat. § 105-278.2.

G.S. § 105-278.2(a) states, "Real property set apart for burial purposes shall be exempted from taxation unless it is owned and held for purposes of (i) sale or rental or (ii) sale of burial rights therein." The Taxpayer contends that based on this statute the Commission erred by not finding that the 7.14 acres of undeveloped land was exempt from taxation.

In support of its contention, the Taxpayer argues that the distinction in G.S. § 105-278.2(a) between real property "set apart for burial purposes" and property held for purposes of "sale" should be interpreted as distinguishing between the undeveloped property in the cemetery and the property which has been platted and developed for burial purposes. Based on this argument, the Taxpayer contends that the only part of the cemetery property which is "held for purposes of . . . sale" under this statute is that part

which is platted and developed for burial sites. Further, the Taxpayer argues that the undeveloped property in the cemetery falls under the statutory language, "[r]eal property set apart for burial purposes" that is not held for sale and is therefore exempt from taxation.

We must interpret the language of the statute to determine whether the Taxpayer is correct in its argument. "The words used in the statute must be given their natural or ordinary meaning." *Southeastern Baptist Theological Seminary, Inc. v. Wake County*, 251 N.C. 775, 782, 112 S.E.2d 528, 533 (1960). " 'Statutes exempting specific property from taxation because of the purposes for which such property is held and used, are and should be construed strictly, when there is room for construction, against exemption and in favor of taxation.' " *Over-look Cemetery, Inc. v. Rockingham County*, 273 N.C. 467, 469, 160 S.E.2d 293, 294 (1968) (citation omitted). This rule does not, however, mean that the statute must " 'be stintingly or even narrowly construed.' " *Id.* at 469, 160 S.E.2d at 294-95 (citation omitted).

Our Supreme Court interpreted the language "set apart for burial purposes" and "owned and held for purposes of sale or rental" in *Over-look Cemetery, Inc., supra*. At the time *Over-look* was decided, this language appeared in G.S. § 105-296(2) which was the applicable exemption statute. At that time, G.S. § 105-296(2) stated, " 'The following real property, and no other, shall be exempted from taxation: . . . (2) Real property, tombs, vaults, and mausoleums set apart for burial purposes, except such as are owned and held for purposes of sale or rental. . . .' " *Over-look Cemetery, Inc., supra*, at 469, 160 S.E.2d at 294.

The plaintiff in *Over-look* was a North Carolina corporation which owned property in Overlook Cemetery that consisted of grave spaces and unmapped and undeveloped land. The plaintiff was appealing the *ad valorem* taxes it had to pay on this property and alleged that its property was exempt under the language of G.S. § 105-296(2).

Our Supreme Court stated:

The words used in G.S. 105-296(2), when given their ordinary meaning, are clear and require no construction. The statute distinguishes between real property "set apart for burial purposes," which is exempt, and that "owned and held for

purposes of sale or rental," which is not exempt. Obviously, plaintiff's property will not be used by plaintiff for burial purposes. It is owned and held by plaintiff for sale to purchasers who in turn will use it for burial purposes. When the words, "set apart for burial purposes," and the words, "owned and held for purposes of sale or rental," are considered contextually, we are of opinion, and so decide, that the exemption contemplated by G.S. 105-296(2) refers only to real property presently in use for burial purposes and property owned and held by persons for their use for burial purposes.

*Over-look Cemetery, Inc.*, 273 N.C. at 469-70, 160 S.E.2d at 295. Further, the Court held that the plaintiff's property was not exempt from *ad valorem* taxes under the language of this statute because "plaintiff's property [was] not held for its use for burial purposes but solely for the purpose of sale to others. . . ." *Id.* at 470, 160 S.E.2d at 295.

In the case *sub judice*, the applicable exemption statute contains the same language that the old exemption statute contained. The fact that the General Assembly chose to use language in G.S. § 105-278.2, the exemption statute before us, that is identical to the language found in G.S. § 105-296(2), the old exemption statute, is a strong indication that the General Assembly intended the same interpretation of this language given to it in the old statute. Thus, we will apply our Supreme Court's interpretation of this language in *Over-look* to the case before us.

The Taxpayer in the present case contends that its undeveloped, unmapped land is real property set aside for burial purposes but not held for sale such that it is exempt from taxes under G.S. § 105-278.2. Based on the holding in *Over-look*, we disagree. The Court in *Over-look* held,

[w]hen the words, "set apart for burial purposes," and the words, "owned and held for purposes of sale. . .," are considered contextually, . . . [the exemption in the statute] refers only to real property presently in use for burial purposes and property owned and held by persons for their use for burial purposes.

*Over-look Cemetery, Inc., supra.*

Like the plaintiff in *Over-look*, the Taxpayer in the present case is a corporation which owns undeveloped, unmapped land as part of a tract of land set apart as a cemetery. In the case of

the Taxpayer, this land has been irrevocably dedicated for use exclusively as a cemetery under the North Carolina Cemetery Act. Additionally, like the plaintiff in *Over-look*, the Taxpayer is not holding undeveloped land for its burial. Thus, because the undeveloped land is irrevocably dedicated for use exclusively as a cemetery, the Taxpayer can only be holding it for the purpose of sale to others as burial sites, like the plaintiff in *Over-look*. The Taxpayer's undeveloped, unmapped land does not, therefore, fall under the exemption of G.S. § 105-278.2 as tax-exempt property. Accordingly, we find no error with the Commission's decision to affirm the taxing of this property.

III.

[3]    Next, the Taxpayer contends that the Commission erred in approving the appraisal method used by the County when it valued the Taxpayer's property. In support of its contention, the Taxpayer brings forward two arguments: (1) that the appraisal method used by the County to assess the undeveloped tract of land and the burial sites failed to follow N.C. Gen. Stat. § 105-278.2(b), and (2) that the replacement cost method should be applied to value all perpetual care cemetery property.

In order to successfully challenge the method of appraisal, the Taxpayer must first overcome the presumption in North Carolina that *ad valorem* property tax assessments are correct. *See, In re Appeal of Amp, Inc.*, 287 N.C. 547, 562, 215 S.E.2d 752, 761-62 (1975). In order to rebut this presumption and prove that a method used by the tax assessor was incorrect, a taxpayer has the burden of showing by competent, material and substantial evidence that:

(1) Either the county tax supervisor used an *arbitrary method* of valuation; or (2) the county tax supervisor used an *illegal method* of valuation; AND (3) the assessment *substantially* exceeded the true value in money of the property. (Citation omitted.) Simply stated, it is not enough for the taxpayer to show that the means adopted by the tax supervisor were wrong, he must also show that the result arrived at is *substantially* greater than the true value in money of the property assessed, i.e., that the valuation was *unreasonably high*. (Citation omitted.)

*Id.* at 563, 215 S.E.2d at 762 (emphasis in the original).

In the present case, the Taxpayer has failed to meet the burden of proving that the result of the assessment of his property was "substantially" greater than the true value in money of the property assessed.

On the issue of valuation, the Commission found:

1. During 1989, the Taxpayer constructed a mausoleum containing 288 crypts. One hundred and twenty-six (126) of these crypts were sold by the Taxpayer, on a pre-need basis, prior to 1 January 1990. For each crypt sold, the Taxpayer received a price of approximately $1,495.

. . .

10. In its appraisal of the Taxpayer's mausoleum, the County correctly applied its schedule of values. The Commission finds that the value assigned to the mausoleum ($150,100) did not exceed the true value in money of the mausoleum as of 1 January 1990. To the contrary, the Taxpayer's evidence as to the sales price of crypt spaces in this mausoleum suggests that the County's appraisal may have been substantially less than the true value in money of the property as of 1 January 1990.

11. In its appraisal of the Taxpayer's 1,216 unsold burial sites at a value of $3,500, the County properly applied its schedule of values. Under the schedule, burial land was assigned a value of $2,500 per acre, with improvements to be appraised separately. Based on the Taxpayer's evidence concerning the sales price of burial spaces, the Commission finds that the County appraised these burial sites at a value substantially less than the true value in money of the property as of 1 January 1990.

12. As to the remaining 7.14 acres of undeveloped land, the County properly applied its schedule of values, which required the assignment of a value of $2,500 per acre to burial land, with improvements to be appraised separately. Based on the Taxpayer's evidence as to the sale[s] price of burial sites, the Commission finds that the County appraised the Taxpayer's 7.14 acres of undeveloped land at a value substantially less than the true value in money of the property as of 1 January 1990.

13. It is apparent from the County's evidence concerning land values in the immediate neighborhood of the subject property that both the 1,216 unsold burial sites and the 7.14 acres of undeveloped land were appraised by the County at a value substantially less than the true value in money of the property as of 1 January 1990. Applying the principle of substitution, which holds that one way to determine the value of a thing is to determine the cost of replacing it, it is clear that if another cemetery operator wished, on 1 January 1990, to purchase land near the Taxpayer, dedicate it to cemetery use, and compete with the Taxpayer, that operator would have paid much more for the land than $2,500 per acre, and would then have been required to make additional expenditures to develop it for cemetery use.

14. The Commission finds additional support for its conclusion that the County appraised both the 1,216 unsold burial sites and the 7.14 acres of undeveloped land at a value substantially less than its true value in money as of 1 January 1990 in the Taxpayer's evidence concerning the sales prices of burial spaces.

Our review of the Commission's findings of fact is limited to a determination of whether they are supported by competent, material, and substantial evidence. *See, In re Humana Hosp. Corp., supra.* Further, we must give due account to the rule of prejudicial error. N.C. Gen. Stat. § 105-345.2(c). After careful review of the record before us, we find competent, material, and substantial evidence to support the findings of the Commission. Thus, the Taxpayer has failed to prove that the valuation of the Tract was substantially greater than its true value. Accordingly, we affirm the decision of the Commission affirming the valuation of the Taxpayer's property.

IV.

[4] Finally, the Taxpayer contends that Lee County unconstitutionally discriminated against the Taxpayer in its valuation of the Tract.

In support of its contention Taxpayer states in its brief:

The Buffalo-Jonesboro Cemetery, Inc. owns and operates a commercial perpetual care cemetery in Lee County on a 19 acre tract. None of its property was taxed by Lee County

prior to 1990. In January 1990 only 3.42 acres of the Buffalo Cemetery tract was assessed for taxation. No undeveloped land was assessed. The unsold mausoleum crypts were assessed at $570.00 per crypt.

First of all, the record before us is void of any evidence that Buffalo-Jonesboro Cemetery owns any undeveloped land. In addition, the record shows that in 1990 and 1991, Lee County assessed the property owned by Buffalo-Jonesboro Cemetery that consisted of unsold burial sites at a value of $2,500 per acre, the same value the County assessed to the Taxpayer's unsold burial sites. Further, on the issue of why the County assessed the unsold mausoleum crypts owned by Buffalo-Jonesboro Cemetery at a value of $570 per crypt, the Assessor testified,

> there is quite a difference in the quality and the construction of the [Buffalo-Jonesboro mausoleum and Taxpayer's mausoleum]. The Buffalo mausoleum is all open. It has a concrete roof covering with overhang for the sides coming down to center. The Lee Memory Gardens mausoleum is a better quality. It does have an enclosed chapel type area between the clusters of crypts.

Additionally, the record before us is also void of any evidence that the County intentionally failed to tax the Buffalo-Jonesboro Cemetery before 1990.

Based on our review of the record, there is no evidence of discrimination against the Taxpayer in the 1990 valuation of its cemetery property. We accordingly overrule the Taxpayer's assignment of error.

Affirmed.

Judges JOHNSON and McCRODDEN concur.