DAVID K. TRAYFORD, M.S., PETITIONER v. NORTH CAROLINA PSYCHOLOGY BOARD, RESPONDENT

No. COA04-865

(Filed 18 October 2005)

**Psychologists and Psychiatrists— licensure also as counselor—degree of supervision**

The Psychology Board could not require petitioner to be supervised in his licensed professional counselor (LPC) practice by virtue of his psychological associate licensure (LPA) despite the fact that his activities need not be supervised under his LPC licensure. The General Assembly has enacted statutory limi-

tations on a board's authority to regulate individuals that are not licensed by that board but that are qualified members of other professional groups, even if those individuals' activities arguably fall within the ambit of the board's regulatory authority. N.C.G.S. § 90-270.4(e), (g).

Judge JACKSON dissenting.

Appeal by petitioner from order entered 8 March 2004 by Judge Orlando F. Hudson, Jr. in Wake County Superior Court. Heard in the Court of Appeals 2 February 2005.

*Allen & Pinnix, P.A., by J. Heydt Philbeck and M. Jackson Nichols, for petitioner.*

*Attorney General Roy Cooper, by Assistant Attorney General Sondra C. Panico, for the State.*

CALABRIA, Judge.

David K. Trayford, M.S. ("petitioner") appeals an order of the Wake County Superior Court affirming the final decision of the North Carolina Psychology Board (the "Psychology Board"), which placed petitioner's license on probation for a period of two years. We reverse and remand.

Petitioner maintains two licenses in the State of North Carolina. He is licensed by the Psychology Board as a psychological associate ("LPA") and by the North Carolina Board of Licensed Professional Counselors ("Counselors Board") as a licensed professional counselor ("LPC"). In December of 1998, petitioner started providing group therapy to adult sexual offenders as a LPC with Carolina Consulting Associates. During this time, petitioner also conducted a non-offender psychoeducational support group for individuals closely associated with the offending individual. In addition to his LPC practice, petitioner also performed contract work as a LPA for Medicaid clients through the Randolph County Mental Health Center. While petitioner confirmed that he was supervised at all relevant times when he was engaged as a LPA, petitioner's LPC practice was not supervised until February of 2002.

Petitioner undertook comprehensive measures to keep his two practices distinct and separate. Petitioner maintained two separate offices for his two practices. He never held himself out as a LPA to his LPC clients. In fact, the Psychology Board admitted that petitioner

**TRAYFORD v. N.C. PSYCHOLOGY BD.**

[174 N.C. App. 118 (2005)]

had not "ever held himself out or otherwise represented himself" as a LPA to any person receiving services from him in his separate counseling practice. Petitioner used a separate disclosure statement in his counseling practice that did not reference his LPA licensure and separate letterheads for his two practices. Phone listings appeared under and solely referenced petitioner's counseling practice, and there was no listing under psychology or any derivation of psychology. Petitioner testified that "someone from the general public" would not be able to see him under his LPA license but would have to be specifically referred by a mental health center.[1]

When petitioner decided to discontinue his LPA work, he informed the Psychology Board, which subsequently triggered an investigation and led to disciplinary action. The Psychology Board found probable cause to believe petitioner had been engaged in activities in the scope of his LPC practice that required supervision for a LPA. In its final agency decision, the Psychology Board determined the same: "[i]f the activities [performed] meet the definition of those activities requiring supervision under [the Psychology Practice Act, petitioner] is required to receive such supervision no matter under which license he purports to be performing such activities." The Psychology Board, accordingly, rejected petitioner's attempt to "parse out" his activities between his LPC and LPA licenses. On petition for judicial review, the trial court affirmed the final agency decision. Petitioner appeals.

"On judicial review of an administrative agency's final decision, the substantive nature of each assignment of error dictates the standard of review." *N.C. Dep't of Env't & Natural Res. v. Carroll,* 358 N.C. 649, 658, 599 S.E.2d 888, 894 (2004). Reversal or modification of the agency's final decision is permitted only when the reviewing court determines a petitioner's substantial rights may have been prejudiced as a result of the agency's findings, inferences, conclusions, or decisions being:

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

---

1. Any clients referred in this manner were on Medicaid and seen by petitioner in his LPA practice as a properly supervised LPA.

TRAYFORD v. N.C. PSYCHOLOGY BD.

[174 N.C. App. 118 (2005)]

(5) Unsupported by substantial evidence admissible . . . in view of the entire record as submitted; or

(6) Arbitrary or capricious, or an abuse of discretion.

N.C. Gen. Stat. § 150B-51(b) (2003). The first four grounds are "law-based" inquiries warranting *de novo* review. *Carroll*, 358 N.C. at 659, 599 S.E.2d at 894. The latter two grounds are "fact-based" inquiries warranting review under the whole-record test. *Id.* Under *de novo* review, a court "considers the matter anew[] and freely substitutes its own judgment for the agency's." 358 N.C. at 660, 599 S.E.2d at 895. (citations and quotation marks omitted). Under the whole-record test, a court "examine[s] all the record evidence—that which detracts from the agency's findings and conclusions as well as that which tends to support them—to determine whether there is substantial evidence to justify the agency's decision." *Id.*, 358 N.C. at 660, 599 S.E.2d at 895. "Substantial evidence" is "relevant evidence a reasonable mind might accept as adequate to support a conclusion." N.C. Gen. Stat. § 150B-2(8b) (2003).

Petitioner's practice of psychology is governed by the Psychology Practice Act. The Psychology Board, created under N.C. Gen. Stat. § 90-270.6 (2003), regulates the practice of psychology in North Carolina for the protection of the public health, safety, and welfare. *See* N.C. Gen. Stat. § 90-270.1 (2003). Petitioner's practice of counseling is, conversely, governed by the Licensed Professional Counselors Act. The Counselors Board, created under N.C. Gen. Stat. § 90-333 (2003), regulates counseling services in North Carolina for the protection of the public health, safety, and welfare. *See* N.C. Gen. Stat. § 90-270.1 (2003). We need not delineate in this case the differences between the practices of counseling and psychology as petitioner's LPA and LPC practices both fit neatly within the ambit of the Psychology Practice Act and the Licensed Professional Counselors Act.[2] One critical difference between the two statutory schemes, however, is that a LPA must be supervised when engaged in petitioner's activities under N.C. Gen. Stat. § 90-275.5(e) (2003) while a LPC is not required to be supervised.

While the practices of counseling and psychology have spheres of confluence, the General Assembly has enacted statutory limitations

2. *Cf.* N.C. Gen. Stat. § 90-272.2(8) (2003) (defining the practice of psychology, in pertinent part, as the modification of human behavior using, *inter alia*, counseling and psychotherapy) and N.C. Gen. Stat. § 90-330 (2003) (defining counseling, in relevant part, as treating mental disorders using, *inter alia*, the counseling relationship and psychotherapeutic techniques).

on a board's authority to regulate individuals that are not licensed by that board but that are qualified members of other professional groups, even if those individuals' activities arguably fall within the ambit of that board's regulatory authority. The Psychology Practice Act, for example, precludes the Psychology Board from preventing "qualified members of other professional groups from rendering services consistent with their professional training and code of ethics, provided they do not hold themselves out to the public by any title or description stating or implying that they are psychologists or are licensed, certified, or registered to practice psychology." N.C. Gen. Stat. § 90-270.4(e) (2003). In accord with the Psychology Practice Act, the Professional Counselors Act exempts LPCs licensed thereunder "from rules pertaining to counseling adopted by other occupational licensing boards." N.C. Gen. Stat. § 90-332.1(c) (2003). Despite these clear exemptions and the degree with which petitioner kept his LPC and LPA practices separate, the Psychology Board contends petitioner is subject to Psychology Board regulation by virtue of his LPA licensure and N.C. Gen. Stat. § 90-270.4(g), which provides as follows:

Except as otherwise provided in this Article if a person exempt from the provisions of [the Psychology Practice Act] and not required to be licensed under [the Psychology Practice Act] is or becomes licensed under [the Psychology Practice Act], he or she shall be required to comply with all conditions, requirements, and obligations imposed by Board rules or by statute upon all other psychologists licensed under [the Psychology Practice Act].

The critical issue before this Court is whether the Psychology Board can require petitioner to be supervised in his LPC practice by virtue of his LPA licensure despite the fact that such activities need not be supervised under his LPC licensure. Petitioner asserts the Psychology Board exceeded its statutory authority by concluding his activities violated applicable statutory provisions and wrongfully interpreted subsections (e) and (g) of N.C. Gen. Stat. § 90-270.4 (2003). This "law-based" inquiry warrants *de novo* review, and, as our resolution of these issues involves the interpretation of two statutory schemes, we initially set forth the relevant, guiding principles.

"The primary rule of statutory construction is that the intent of the legislature controls the interpretation of a statute." *Stevenson v. City of Durham*, 281 N.C. 300, 303, 188 S.E.2d 281, 283 (1972). Thus, the court is to give clear and unambiguous statutory language " 'its natural and ordinary meaning unless the context requires other-

wise.'" *Spruill v. Lake Phelps Vol. Fire Dep't, Inc.*, 351 N.C. 318, 320, 523 S.E.2d 672, 674 (2000) (quoting *Turlington v. McLeod*, 323 N.C. 591, 594, 374 S.E.2d 394, 397 (1988)). "If the language is ambiguous or unclear, the reviewing court must construe the statute in an attempt not to 'defeat or impair the object of the statute . . . if that can reasonably be done without doing violence to the legislative language.'" *Carolina Power & Light Co. v. City of Asheville*, 358 N.C. 512, 518, 597 S.E.2d 717, 722 (2004) (quoting *North Carolina Baptist Hosp., Inc. v. Mitchell*, 323 N.C. 528, 532, 374 S.E.2d 844, 846 (1988)). In so doing,

> a court may look to other indicia of legislative will, including: the purposes appearing from the statute taken as a whole, the phraseology, the words ordinary or technical, the law as it prevailed before the statute, the mischief to be remedied, the remedy, the end to be accomplished, statutes in pari materia, the preamble, the title, and other like means . . . . Statutory provisions must be read in context[,] [and those] dealing with the same subject matter must be construed in pari materia, as together constituting one law, and harmonized to give effect to each.

*Proposed Assessments of Additional Sales & Use Tax v. Jefferson-Pilot Ins. Co.*, 161 N.C. App. 558, 560, 589 S.E.2d 179, 181 (2003) (internal citations and quotation marks omitted). With respect to the Psychology Practice Act, we are also mindful that it is in derogation of the common law and is penal in nature and must, therefore, be strictly construed. *Elliott v. N.C. Psychology Board*, 348 N.C. 230, 235, 498 S.E.2d 616, 619 (1998).

We now turn to the Psychology Board's argument that N.C. Gen. Stat. § 90-270.4(g) allows it to regulate petitioner's LPC practice because he opted to obtain licensure as a LPA. We are of the opinion that this argument cannot be sustained. First, subsection (g) by its own terms operates unless "otherwise provided in th[e] [Psychology Practice Act,]" yet subsection (e) in the same statutory provision expressly allows petitioner, as a "qualified member[] of [an]other professional group[,]" *i.e.*, a LPC to "render[] services consistent with [his] professional training and code of ethics . . . ."[3] Second, N.C. Gen. Stat. § 90-332.1, regardless of any seeming conflict in N.C. Gen.

---

3. This exemption is qualified by the requirement that the one claiming it not hold himself out in any way as a psychologist or psychological associate. As our previous discussion makes clear, petitioner scrupulously avoided doing so, and this qualification has no application in the instant case.

Stat. § 90-270.4 unequivocally insulates petitioner as a "[p]erson[] licensed under [the Professional Counselors Act] . . . from rules pertaining to counseling adopted by other occupational licensing boards." Third, the Psychology Board's interpretation would discourage individuals from studying and achieving multiple licenses, despite the fact that such additional learning could only bolster learning in those areas falling within the auspices of multiple boards.[4]

Other practical considerations militate against the Psychology Board's interpretation. For example, the Psychology Board's interpretation would produce harsh results: in the instant case petitioner, duly licensed by the Psychology Board yet also licensed by the Counselors Board as a LPC, would be forced to adhere to the Psychology Board's requirements despite the fact that those requirements were more onerous than the ones imposed by the Counselors Board and despite that his activities fall squarely within the ambit of the counseling. In such circumstances, the Psychology Board's requirements would supercede and be paramount over those of the Counselors Board. Petitioner's LPC practice would be at a material disadvantage to any other LPC practice conducted by another solely licensed as a LPC, despite the fact that the other individual would lack the benefit of petitioner's additional education on the relevant subject matter. Moreover, petitioner would be forced, evidently, to surrender his Psychology Board license if he were not supervised before engaging in his LPC practice or face disciplinary action despite that his LPC practice falls entirely within his qualifications as determined by the Counselors Board. Finally, the Psychology Board's position is in conflict with an opinion issued by the Attorney General's office, which provides that qualified members of other professional fields of counseling need not be licensed as a psychology or psychological associate by the Psychology Board so long as (1) they do not hold themselves out or represent themselves as psychologists in any way, (2) their counseling is not simply an attempt to apply psychological principles and procedures under another label without acquiring a license as a psychologist, and (3) what they are doing is

---

4. The Psychology Board also asserts that governance by multiple boards can only better protect the public. That is only true, however, if either one or both of the boards granted authority to regulate a certain practice were deficient in the administration of their duties. Presupposing that both boards are equally capable of performing their duties, we see no advantage in redundant regulation. Moreover, to the extent the Psychology Board argues petitioner is being allowed to dictate which of the two boards will govern his two practices, we note petitioner's extensive measures to keep separate his two practices will clearly indicate which board has the authority to regulate should a disciplinary issue arise.

not principally psychology. As it is conceded that petitioner's activities fall both within the practices of psychology and counseling, we cannot say his activities are principally psychology any more than we can say his activities are principally counseling.

In light of these reasons, and the narrow construction that we are to apply in considering the Psychology Practice Act, we conclude petitioner may continue his LPC practice without interference from the Psychology Board so long as he remains a qualified and licensed professional counselor and is vigilant in not promoting that practice by holding himself out as a licensed psychological associate. The judgment of the trial court is reversed, and the case is remanded to the trial court with instructions to remand to the Psychology Board so that it may vacate the disciplinary action taken in accordance with this opinion.

Reversed and remanded.

Judges HUNTER concurs.

Judge JACKSON dissents with a separate opinion.

JACKSON, Judge, dissenting.

For the reasons stated below, I respectfully dissent from the majority opinion.

As noted correctly by the majority, "[t]he primary rule of statutory construction is that the intent of the legislature controls the interpretation of a statute." *Stevenson v. City of Durham*, 281 N.C. 300, 303, 188 S.E.2d 281, 283 (1972). As such, this Court must give clear and unambiguous statutory language " 'its natural and ordinary meaning unless the context requires otherwise.' " *Spruill v. Lake Phelps Vol. Fire Dep't, Inc.*, 351 N.C. 318, 320, 523 S.E.2d 672, 674 (2000) (quoting *Turlington v. McLeod*, 323 N.C. 591, 594, 374 S.E.2d 394, 397 (1988)). "If the language is ambiguous or unclear, the reviewing court must construe the statute in an attempt not to 'defeat or impair the object of the statute . . . if that can reasonably be done without doing violence to the legislative language.' " *Carolina Power & Light Co. v. City of Asheville*, 358 N.C. 512, 518, 597 S.E.2d 717, 722 (2004) (quoting *North Carolina Baptist Hosp., Inc. v. Mitchell*, 323 N.C. 528, 532, 374 S.E.2d 844, 846 (1988)). In so doing,

> a court may look to other indicia of legislative will, including: the purposes appearing from the statute taken as a whole, the phrase-

ology, the words ordinary or technical, the law as it prevailed before the statute, the mischief to be remedied, the remedy, the end to be accomplished, statutes *in pari materia*, the preamble, the title, and other like means . . . . Statutory provisions must be read in context[,] [and those] dealing with the same subject matter must be construed *in pari materia*, as together constituting one law and harmonized to give effect to each.

*Proposed Assessments of Additional Sales & Use Tax v. Jefferson-Pilot Ins. Co.*, 161 N.C. App. 558, 560, 589 S.E.2d 179, 181 (2003) (internal citations and quotation marks omitted). With respect to the Psychology Practice Act, it also is notable that the Act is in derogation of the common law and is penal in nature, and therefore, it must be strictly construed. *Elliott v. N.C. Psychology Bd.*, 348 N.C. 230, 235, 498 S.E.2d 616, 619 (1998).

Petitioner's practice of psychology is governed by the Psychology Practice Act. The Psychology Board, created pursuant to North Carolina General Statutes, section 90-270.6 (2003), regulates the practice of psychology in North Carolina for the protection of the public health, safety, and welfare. *See* N.C. Gen. Stat. § 90-270.1 (2003). The practice of psychology is defined, in relevant part, as the modification of human behavior through psychological principles "for the purpose of preventing or eliminating symptomatic, maladaptive, or undesired behavior. . . ." N.C. Gen. Stat. § 90-272.2(8) (2003). Among other things, counseling and psychotherapy expressly are included in the definition of the practice of psychology, *see id.*, and supervision is required for any LPA when engaging in such activities. N.C. Gen. Stat. § 90-270.5(e) (2003). However, "qualified members of other professional groups . . . rendering services consistent with their professional training and code of ethics" are exempt, "provided they do not hold themselves out to the public by any title or description stating or implying that they are psychologists or are licensed, certified, or registered to practice psychology." N.C. Gen. Stat. § 90-270.4(e) (2003). Nonetheless, North Carolina General Statutes, section 90-270.4(g) provides that, "[e]xcept as otherwise provided in [the Psychology Practice Act], . . . a person [who is or becomes licensed by the Psychology Board must] comply with *all* conditions, requirements, and obligations imposed by Board rules or by statute upon all other psychologists licensed under [the Psychology Practice Act]" even if that person otherwise would be "exempt from the provisions of [the Psychology Practice Act] and [is] not required to be licensed under [the Psychology Practice Act]." (Emphasis added.)

The Licensed Professional Counselors Act governs Petitioner's practice of counseling. The North Carolina Board of Licensed Professional Counselors, created pursuant to North Carolina General Statutes, section 90-333, regulates counseling services in North Carolina for the protection of the public health, safety and welfare. *See* N.C. Gen. Stat. § 90-329 (2003). Counseling is defined, in relevant part, as the use of the counseling relationship and psychotherapeutic techniques to treat mental disorders and other conditions. N.C. Gen. Stat. § 90-330 (2003). Just as with the Psychology Practice Act, these types of activities performed by petitioner fall within the purview of counseling. *Id.* However, in contrast to the Psychology Practice Act, supervision is not a requirement for LPC's when counseling clients and they are exempt "from rules pertaining to counseling adopted by other occupational licensing boards" if "licensed under [the Licensed Professional Counselors Act]. . . ." N.C. Gen. Stat. § 90-332.1(c) (2003).

Necessarily, there will be individuals, such as petitioner in the instant case, who choose licensure under both schemes. In such cases, we must harmonize the two statutes. Read together, these statutory schemes lead to several conclusions. First, nothing in the record indicates petitioner's activities in his separate LPA and LPC practices fall outside of the contemplated purview of both the Psychology Practice Act and the Licensed Professional Counselors Act; therefore, petitioner would be permitted to engage in such therapeutic work as either a LPC or a LPA. Next, if petitioner were licensed solely as a LPC, North Carolina General Statutes, section 90-332.1(c) would deny the Psychology Board the authority to adopt rules governing petitioner's counseling practice because the Licensed Professional Counselor's Act contains a provision that specifically exempts LPC's from regulation under the Psychology Practice Act. North Carolina General Statutes, section 90-270.5(e) of the Psychology Practice Act permits petitioner's rendering of counseling services, were he solely licensed as a LPC, so long as he abstained from holding himself out to the public as a psychologist, or as one licensed, certified, or registered to practice psychology. In addition, because petitioner is not solely a LPC, but also is licensed by the Psychology Board, North Carolina General Statutes, section 90-270.4(g) operates as a bar to the general exemptions of North Carolina General Statutes, sections 90-332.1(c) and 90-270.4(e) and requires that petitioner also comply with Psychology Board rules and statutes applicable to other licensed psychologists under the Psychology Practice Act. Moreover, North Carolina General Statutes, section 90-270.4(g)

explicitly provides that "if a person exempt from the provisions of [the Psychology Practice Act] and not required to be licensed under [the Psychology Practice Act] is or becomes licensed under [the Psychology Practice Act], he or she shall be required to comply with all conditions, requirements, and obligations imposed by Board rules or by statute upon all other psychologists licensed under [the Psychology Practice Act]." Therefore, it is clear that petitioner was on notice that he was required to comply with the supervision requirements of the Psychology Practice Act.

Accordingly, it is not sufficient for petitioner to show his activities fall within the purview of the Professional Counselors Act under the statutory provisions harmonized herein; he also. must show that his activities fall outside the purview—and regulation—of the Psychology Practice Act. Because his activities do not, I would overrule these assignments of error and affirm the decision of the trial court.