JOSEPH MICHAEL GRIFFITH, Plaintiff v. NORTH CAROLINA DEPARTMENT OF CORRECTION, THEODIS BECK, and BOYD BENNETT, Defendants

No. COA10-1157

(Filed 5 April 2011)

## 1. Judgments— oral orders—not reduced to writing— non-existent

Two assignments of error were not properly before the Court of Appeals where they were based on oral orders which were not reduced to writing. The orders therefore did not exist.

## 2. Judgments— oral orders—not reduced to writing—motions not ruled upon

The trial court did not err by not reducing to writing its rulings on two motions where it was not clear that the court was ruling on those motions.

## 3. Judgment— order—delegation of drafting—guidance

Although plaintiff contended that the trial court erred by ordering defendant to draft a court order with insufficient guidance on conclusions or grounds, the court's acceptance of the proposed order as drafted manifested its agreement with the conclusions stated in the written order. Furthermore, the written order conformed with the oral judgment pronounced in open court.

GRIFFITH v. N.C. DEP'T OF CORR.

[210 N.C. App. 544 (2011)]

**4. Constitutional Law— North Carolina—government fees—trial by jury—issues of law only**

The trial court did not deny plaintiff his North Carolina constitutional right to a trial by jury by ruling on a matter involving fees taken without legislative approval. The proper interpretation of statutory provisions presented only a question of law, not fact.

**5. Trials— motions to continue—no abuse of discretion—no prejudice**

The trial court did not abuse its discretion by granting defendant's motions to continue where sufficient grounds existed for granting the motions. Local rules were violated in the timing of its ruling, but plaintiff appeared at the hearing prepared to argue and was not prejudiced.

**6. Judges— ex parte communication—calendaring motions to continue**

There was no *ex parte* communication between the trial judge and defendant in the calendaring of defendant's motions to continue. Defendant's written notice to plaintiff and the trial court administrator's subsequent notice of hearing followed proper procedure.

**7. Prisons and Prisoners— disciplinary fees—further legislative authority not needed**

The trial court did not err by concluding that the Department of Correction did not have to first obtain legislative authority before instituting a disciplinary fee against inmates.

**8. Administrative Law— agency authority—imposition of fees—inmates—specific statute controls general**

It was evident from the statutory structure that the Legislature intended that N.C.G.S. § 12-3-1 operate as a general limitation on the rule-making powers of state agencies, but the particular statute addressing the Department of Correction's rule-making authority for prisoners, N.C.G.S. § 150B-1(d)(6), prevailed over the general statute.

**9. Prisons and Prisoners— inmates—not members of the public**

The phrase "to the public" in N.C.G.S. § 12-3-1, which limits the authority of agencies to raise fees, did not apply to Department of Correction disciplinary fees against inmates because inmates are removed from the community and are not members of the public.

**10. Pleadings— judgment on—no factual issues**

The trial court properly granted defendant's motion for judgment on the pleadings where the factual allegations were admitted in the pleadings and the trial court's conclusions of law were an accurate construction of the statutes at issue.

Appeal by plaintiff from judgment entered 24 July 2010 by Judge W. Erwin Spainhour in Anson County Superior Court. Heard in the Court of Appeals 21 February 2011.

*Joseph Michael Griffith, pro se, plaintiff appellant.*

*Attorney General Roy Cooper, by Assistant Attorney General Yvonne B. Ricci, for North Carolina Department of Correction defendant appellee.*

McCULLOUGH, Judge.

Plaintiff appeals from an order granting defendant's second motion for judgment on the pleadings and dismissing plaintiff's action. We affirm.

## I. Background

The relevant facts and procedural background are as follows: On 30 June 2008, Joseph Michael Griffith ("plaintiff") filed a petition to sue as an indigent and proposed complaint in Anson County Superior Court. In the proposed complaint, plaintiff alleges his state constitutional and statutory rights were violated by defendants North Carolina Department of Correction ("NCDOC"), Secretary of Correction Theodis Beck, and Director of the Division of Prisons Boyd Bennett.[1] On 1 November 2000, defendant NCDOC implemented a ten dollar ($10.00) administrative fee for inmates whose disciplinary offenses result in a guilty disposition. Plaintiff claims that defendant NCDOC implemented this fee without first securing legislative approval in violation of N.C. Gen. Stat. § 12-3.1 and Article I, sections 8 and 19 of the North Carolina Constitution. Plaintiff's complaint asserts that defendant NCDOC has since illegally collected disciplinary fees and ought to account for and disgorge all such sums.

On 27 August 2009, defendant NCDOC filed an answer admitting the imposition of the fee, but denying plaintiff's allegations of illegality.

---

1. Secretary of Correction Theodis Beck and Director of the Division of Prisons Boyd Bennett are not parties to this appeal.

Defendant NCDOC's answer further raised the affirmative defenses of failure to state a claim upon which relief can be granted pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6), insufficiency of service of process, and sovereign immunity. Shortly thereafter, on 7 September 2009, plaintiff filed both a request for admissions and a request for documents. On 12 October 2009, defendant NCDOC filed a motion for judgment on the pleadings for insufficiency of service of process, contemporaneously with a motion for entry of a protective order asserting that defendant NCDOC is entitled to reasonable protection from plaintiff's documents request until such time as there is a ruling on defendant NCDOC's pending motion for judgment on the pleadings. Plaintiff responded by filing his opposition to defendant NCDOC's motion for judgment on the pleadings for insufficiency of service of process on 19 November 2009. The trial court scheduled defendant NCDOC's two motions for hearing on 30 November 2009.

However, on 23 November 2009, defendant NCDOC filed a motion to continue, stating that plaintiff had appealed the dismissal of a similar civil action in which plaintiff alleged that defendant NCDOC had illegally imposed inmate medical co-payment charges without first securing legislative approval as required by N.C. Gen. Stat. § 12-3.1. Defendant NCDOC contended that, due to the similarity of arguments between the present case and the case then pending before the Court of Appeals, the Court of Appeals' ruling in the similar case could affect the final disposition of the present case, and therefore the hearing in this matter should be continued until the related Court of Appeals ruling is issued. Defendant NCDOC distributed a copy of the motion to continue to plaintiff by U.S. mail on 18 November 2009. The trial court granted defendant NCDOC's motion to continue on 23 November 2009 by order signed by the Superior Court Administrator. Plaintiff filed his opposition to defendant NCDOC's motion to continue on 24 November 2009, one day after the motion was granted. The hearing on defendant NCDOC's two motions was rescheduled for 1 March 2010.

On 24 February 2010, defendant NCDOC filed a second motion to continue. On 16 February 2010, the Court of Appeals dismissed plaintiff's appeal in his related action for medical copayment charges for failure to file a timely notice of appeal. Subsequent to that decision, defendant NCDOC finalized its second motion for judgment on the pleadings for failure to state a claim for which relief could be granted, which defendant NCDOC filed contemporaneously with a supporting brief and its second motion to continue. Defendant NCDOC requested

the continuance so that all three of its dispositive motions in the present matter could be heard by the trial court on the same motions hearing date. Defendant NCDOC distributed a copy of its second motion to continue to plaintiff by U.S. mail on 22 February 2010. By order signed by the Superior Court Administrator, the trial court granted defendant NCDOC's second motion to continue on 24 February 2010.

On 1 March 2010, plaintiff filed a motion demanding a trial by jury, and on 2 March 2010, plaintiff filed his opposition to defendant NCDOC's second motion for judgment on the pleadings for failure to state a claim for which relief can be granted. On 10 March 2010, defendant NCDOC sent a notice of hearing of defendant NCDOC's motions to plaintiff. The language of the notice stated: "NOTICE IS HEREBY GIVEN that [the trial court] ordered [defendant NCDOC] to bring Defendant's motions for Entry of a Protective Order and Judgment on the Pleadings on for hearing before the presiding judge of the Superior Court of Anson County on 14 June 2010[.]" A Notice of Hearing was also sent by the Superior Court Administrator to plaintiff on 29 April 2010.

On 14 June 2010, the trial court heard argument on the substantive issues addressed in defendant NCDOC's second motion for judgment on the pleadings for failure to state a claim for which relief could be granted. At the same time, the trial court also heard argument for the same motion filed by defendant NCDOC in a second factually identical civil action filed by another inmate. At the conclusion of the hearing, the trial court granted defendant NCDOC's "motions," stating: "The motions of the Attorney General's Office in each of these cases are allowed." The trial court then directed defendant NCDOC, as the prevailing party, to prepare a draft order for the trial court's consideration. Defendant NCDOC drafted an order dismissing the complaint under each of the grounds alleged in defendant NCDOC's second motion for judgment on the pleadings for failure to state a claim for which relief could be granted. The trial court signed the order on 24 July 2010 and returned it by mail to defendant NCDOC. On 30 July 2010, defendant NCDOC mailed the signed order to the Clerk of Anson County Superior Court for filing and mailed a copy of the letter and signed order to plaintiff. Plaintiff appeals.

## II. Oral orders

**[1]** By his first two assignments of error, plaintiff contends the trial court committed reversible error in "verbally" granting defendant

NCDOC's motions for judgment on the pleadings for insufficiency of service of process and entry of a protective order. These two "verbal orders," which plaintiff contends are error, are not properly before this Court.

"[A] judgment is entered when it is reduced to writing, signed by the judge, and filed with the clerk of court." N.C. Gen. Stat. § 1A-1, Rule 58 (2009). " 'When [a trial court's] oral order is not reduced to writing, it is non-existent and thus cannot support an appeal.' " *Olson v. McMillian*, 144 N.C. App. 615, 619, 548 S.E.2d 571, 574 (2001) (quoting *Southern Furn. Hdwe., Inc. v. Branch Banking & Tr. Co.*, 136 N.C. App. 695, 702, 526 S.E.2d 197, 201 (2000) (citation omitted)). "The announcement of judgment in open court is the mere rendering of judgment, not the entry of judgment. The entry of judgment is the event which vests this Court with jurisdiction." *Worsham v. Richbourg's Sales & Rentals*, 124 N.C. App. 782, 784, 478 S.E.2d 649, 650 (1996) (citations omitted).

In the present case, plaintiff argues the trial court orally granted defendant NCDOC's motions for judgment on the pleadings for insufficiency of service of process and entry of a protective order when the trial court stated: "The motions are allowed. The motions of the Attorney General's Office in each of these cases are allowed." Notably, during the course of the hearing, the trial court heard arguments from defendant NCDOC on the substantive issues addressed in both defendant NCDOC's second motion for judgment on the pleadings in the present case, and the same dispositive motion filed in another action with identical facts and legal issues. Although it is unclear from the trial court's statement alone exactly which motions were being granted, in the context of the substantive arguments being heard by the trial court, it appears the trial court was granting defendant NCDOC's dispositive motions in each matter. Nevertheless, the trial court's 24 July 2010 order does not contain a ruling on defendant NCDOC's motions for judgment on the pleadings for insufficiency of service of process or entry of a protective order. Accordingly, because there is no written order granting or otherwise ruling on defendant NCDOC's motions for judgment on the pleadings for insufficiency of service of process or entry of a protective order, these two "verbal orders" are non-existent, and therefore, these two assignments of error are not properly before this Court.

**[2]** Similarly, by his third assignment of error, plaintiff contends the trial court committed prejudicial error in signing only one court order

granting defendant NCDOC's second motion for judgment on the pleadings and not drafting and signing the other two court orders that the court "verbally granted" at the hearing. Plaintiff argues that, because the trial court verbally stated defendant NCDOC's "motions" were granted, the trial court had a responsibility to ensure that all three motions before the court were also written for the record.

As stated above, oral orders of the trial court are "non-existent." *McMillian*, 144 N.C. App. at 619, 548 S.E.2d at 574. "The general rule is that, the mere ruling, decision, or opinion of the court, no judgment or final order being entered in accordance therewith, does not have the effect of a judgment, and is not reviewable by appeal or writ of error." *Munchak Corp. v. McDaniels*, 15 N.C. App. 145, 147-48, 189 S.E.2d 655, 657 (1972) (internal quotation marks and citation omitted). The trial court has no responsibility to reduce to writing an order which it did not actually render. In the present case, it is unclear from the trial court's use of the plural form "motions" whether the trial court was in fact granting defendant NCDOC's three motions as they relate to plaintiff's case, or whether the trial court was only granting the dispositive motions on the pleadings filed in each of the two related cases being heard at the same time before the trial court. However, the context of the hearing and the final written order do make clear what the trial court actually ruled on, which was defendant NCDOC's second motion for judgment on the pleadings for failure to state a claim for which relief can be granted. Therefore, this assignment of error is overruled.

### III. Drafting of court order by prevailing party

**[3]** In his fourth assignment of error, plaintiff contends the trial court committed prejudicial error in ordering defendant NCDOC to draft the court order without giving any conclusions of law and/or specifying the grounds why defendant NCDOC's "motions" were being granted.

This Court has previously held:

"[P]ursuant to the provisions of N.C. Gen. Stat. § 1A-1, Rule 58 of the Rules of Civil Procedure, after 'entry' of judgment in open court, a trial court retains the authority to approve the judgment and direct its prompt preparation and filing." . . . Nothing in [N.C. Gen. Stat. § 1A-1, Rule 58] or common practice precludes the trial court from directing the prevailing party to draft an order on its behalf. Instead, "[s]imilar procedures are routine in civil cases[.]"

GRIFFITH v. N.C. DEP'T OF CORR.

[210 N.C. App. 544 (2011)]

*In re J.B.*, 172 N.C. App. 1, 25, 616 S.E.2d 264, 279 (2005) (citations omitted). In the present case, the trial court ordered defendant NCDOC to draft the written order reflecting the trial court's ruling on the matter. Such order is proper under the Rules of Civil Procedure in North Carolina.

In addition, "[a] trial judge cannot be expected to enter in open court immediately after trial the detailed findings of fact and conclusions of law that are generally required for a final judgment. If the written judgment conforms in general terms with the oral entry, it is a valid judgment." *Morris v. Bailey*, 86 N.C. App. 378, 389, 358 S.E.2d 120, 127 (1987); *see also Edwards v. Taylor*, 182 N.C. App. 722, 727, 643 S.E.2d 51, 54 (2007). While the trial court did not specify the particular grounds or conclusions of law to be stated in the order, the trial court was free to modify or reject the proposed order drafted by defendant NCDOC if the trial court felt the proposed order did not reflect the trial court's entire ruling. However, the trial court accepted the proposed order as drafted, thereby manifesting the trial court's agreement with the conclusions of law stated in the written order. Further, the trial court entered its verbal order after hearing argument by the parties addressing the substantive issues in defendant NCDOC's second motion for judgment on the pleadings. Given the context in which the oral order was made during the hearing, we find that the written order of the trial court conforms with the oral judgment pronounced in open court. Accordingly, the trial court's actions were proper, and this assignment of error is overruled.

## IV. Motion for trial by jury

[4] In his fifth assignment of error, plaintiff contends the trial court violated his due process rights under Article I, section 19 of the North Carolina Constitution by denying his motion for a trial by jury on the issue involved in this matter, which plaintiff alleges concerns the illegal taking of his property.

Our Supreme Court has held:

Under the North Carolina Constitution, a party has a right to a jury trial in "all controversies at law respecting property." N.C. Const. art. I, § 25. This constitutional right to a jury trial . . . is not absolute, however. *N.C. Nat'l Bank v. Burnette*, 297 N.C. 524, 537, 256 S.E.2d 388, 396 (1979). The right "is premised upon a preliminary determination by the trial judge that there indeed exist genuine issues of fact . . . which require submission to the jury." *Id.*

*Dockery v. Hocutt,* 357 N.C. 210, 217, 581 S.E.2d 431, 436 (2003).

In the present case, plaintiff's claim alleges that defendant NCDOC has illegally collected disciplinary fees and that such action is an illegal taking of his property because defendant NCDOC implemented this fee without first securing legislative approval in violation of N.C. Gen. Stat. § 12-3.1. As such, plaintiff's claim centers on statutory construction of N.C. Gen. Stat. § 12-3.1, as well as any related statutory provisions, including those found in Chapter 150B—the Administrative Procedure Act ("APA"), that may govern defendant NCDOC's actions. Proper interpretation of statutory provisions presents a question of law, not fact. *Brown v. Flowe,* 349 N.C. 520, 523, 507 S.E.2d 894, 896 (1998); *see also Ford v. State of North Carolina,* 115 N.C. App. 556, 558, 445 S.E.2d 425, 427 (1994) ("The proper interpretation of APA statutory provisions, as with any statute, presents a question of law."). Because only questions of law were to be heard and determined in plaintiff's action, plaintiff had no right to a jury trial, as there existed no factual issues requiring submission to a jury. This assignment of error is thereby overruled.

### V: *Ex parte* communications

[5] Plaintiff's sixth assignment of error is that the trial court committed prejudicial error in having *ex parte* communications with defendant NCDOC's counsel on three separate occasions.

The first such occasion alleged by plaintiff occurred when the trial court granted defendant NCDOC's first motion to continue on 23 November 2009. Plaintiff alleges this act was an *ex parte* communication because the trial court granted the motion to continue without having considered plaintiff's opposition motion filed on 24 November 2009, the day after the motion to continue was granted. A second similar occasion alleged by plaintiff occurred when the trial court granted defendant NCDOC's second motion to continue on 24 February 2010. Plaintiff alleges this act was an *ex parte* communication because the trial court granted the motion to continue before plaintiff received a copy of the motion on 25 February 2010, the day after the motion to continue was granted. Plaintiff equates receipt of the motion with service of the motion and argues that, because he was not "served" with the second motion to continue until the day after it was granted, the trial court's grant of the motion was an improper *ex parte* communication.

"[A] motion for continuance is 'ordinarily addressed to the sound discretion of the trial judge and not subject to review on appeal

absent an abuse of that discretion.' " *McIntosh v. McIntosh*, 184 N.C. App. 697, 701, 646 S.E.2d 820, 823 (2007) (quoting *State v. Parton*, 303 N.C. 55, 68, 277 S.E.2d 410, 419 (1981), *overruled on other grounds*, *State v. Freeman*, 314 N.C. 432, 437-38, 333 S.E.2d 743, 746-47 (1985)). This Court will find such an abuse of discretion only if "the decision was so arbitrary that it could not have been the result of a reasoned decision." *N.C. State Bar v. McLaurin*, 169 N.C. App. 144, 148, 609 S.E.2d 491, 494 (2005).

In the present case, we find the trial court did not abuse its discretion in granting both of defendant NCDOC's motions to continue. The first motion to continue was requested because a case with the same or similar legal issues was pending before this Court at the time, and the outcome of that case could have impacted the merits of the present case. Similarly, the second motion to continue was requested because this Court's decision in the related case was issued only a few days before the scheduled hearing date in the present case; and following this Court's decision in the related case, defendant NCDOC filed its second motion for judgment on the pleadings in the present case. Defendant NCDOC based its request for continuance on having one hearing for all three of defendant NCDOC's pending motions. We find that sufficient grounds existed to grant both motions for continuance, and therefore, the trial court did not abuse its discretion in granting the motions in the present case.

We note that pursuant to Rule 6.1 of the Local Rules of Practice for Judicial District 20-A, which serves as the local rules of procedure for Anson County Superior Courts, the trial court coordinator is designated as the appropriate judicial official who "shall rule upon all continuance requests . . . ." Local Rules of Practice, Case Management Plan for Superior Civil Cases, Judicial District 20-A, at 5 (2006). Therefore, the granting of the motions to continue by the Superior Court Administrator in the present case was proper pursuant to the local rules of procedure, contrary to plaintiff's assertion of impropriety.

We also note that, pursuant to Rule 6.3 of the Local Rules of Practice for Judicial District 20-A, a copy of a motion to continue must only be "distributed" to an unrepresented party before presentation of the motion to the appropriate judicial official. *Id.* at 6. Distribution occurs, *inter alia*, when the motion is deposited in the U.S. mail. *Id.* The date plaintiff received the copy of the motion is irrelevant under the local rules of procedure, and therefore, the record indicates that plaintiff was properly "served" with both

motions to continue in the present case when defendant NCDOC deposited a copy of the motions in the mail to plaintiff before filing the motions with the trial court.

However, also according to Rule 6.4 of the Local Rules of Practice for Judicial District 20-A, "[u]nrepresented parties shall have a period of three (3) working days following completion of distribution to communicate, by any means, objections to the motion for continuance to the moving party and the office of the Senior Resident Superior Court Judge or the office of his designee." *Id.* In the present case, the trial court granted defendant NCDOC's first motion to continue on 23 November 2009, on the third working day after defendant NCDOC deposited a copy of the motion in the mail to plaintiff on 18 November 2009. The trial court likewise granted defendant NCDOC's second motion to continue on 24 February 2010, on the second working day after defendant NCDOC deposited a copy of the motion in the mail to plaintiff on 22 February 2010. Therefore, while the trial court's decision to grant the motions to continue were proper under the circumstances of the present case, the trial court violated the local rules of procedure in ruling on the motions to continue without waiting three working days to receive any objections from plaintiff.

Despite such a violation of the local rules of procedure, plaintiff has made no showing of prejudice, as he appeared at the motions hearing and was prepared with his arguments on the rescheduled date. "[N]o error or defect in any ruling or order or in anything done or omitted by any of the parties is ground for granting a new trial or . . . for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action amounts to the denial of a substantial right." N.C. Gen. Stat. § 1A-1, Rule 61 (2009). The appellant bears the burden of showing how the trial court's alleged error prejudiced the appellant. *Stott v. Nationwide Mut. Ins. Co.*, 183 N.C. App. 46, 50, 643 S.E.2d 653, 656 (2007). Plaintiff is unable to demonstrate any way in which the trial court's actions in continuing the hearing prejudiced his rights.

[6] Plaintiff alleges the third occasion on which the trial court had *ex parte* communications with defendant NCDOC occurred when the trial court "ordered" the hearing date for defendant NCDOC's motions for entry of protective order and judgment on the pleadings. Plaintiff alleges this was an *ex parte* communication because plaintiff was only served with the notice of hearing from defendant NCDOC and never received a copy of the referenced "order." However, the wording

appearing in the notice of hearing mailed by defendant NCDOC simply reflects defendant NCDOC's request for the superior court judge to calendar the hearing on defendant NCDOC's motions for the date and time reflected in the written notice of hearing. There is no actual written "order" made by the judge setting the hearing date, other than the court calendar. *See* Rules 5.1 and 5.2 of the Local Rules of Practice for Judicial District 20-A at 4-5. There is no evidence in the record that defendant NCDOC had any improper input into the setting of the trial date, other than through its proper motions to continue, and therefore, the trial court's decision on the court calendar and defendant NCDOC's written notice of hearing does not constitute an *ex parte* communication. Rather, defendant NCDOC's written notice of hearing to plaintiff and the trial court administrator's subsequent notice of hearing followed proper trial court procedure. *See* Rule 5 of the Local Rules of Practice for Judicial District 20-A at 5. Plaintiff is likewise unable to demonstrate any way in which the trial court's actions in setting and noticing the hearing prejudiced his rights. Therefore, this assignment of error must be overruled.

## VI. Conclusion of law one

**[7]** In his seventh assignment of error, plaintiff contends the trial court erred in its conclusion of law one. Conclusion of law one states:

[NCDOC] is exempt from the rule-making provisions of Article 2A of the Administrative Procedure Act ("APA") "with respect to matters relating solely to persons in its custody or under its supervision, including prisoners, probationers, and parolees." N.C. Gen. Stat. § 150B-1(d)(6) (2009). With respect to such persons, [NCDOC] is exempt from the prohibition against establishing fees by rule absent statutory authorization. *See* N.C. Gen. Stat. § 150B-19(5). [NCDOC] is similarly exempt from the requirement that it comply with N.C. Gen. Stat. § 12-3.1 before promulgating rules that establish a new fee or increase an existing fee. *See* N.C. Gen. Stat. § 150B-21.3(c1). The [NCDOC] Inmate Disciplinary Procedures and the collection of an administrative fee resulting from a guilty disposition relates solely to persons in [NCDOC]'s custody, such that [NCDOC] was not required to comply with N.C. Gen. Stat. § 12-3.1 before establishing the ten ($10.00) dollar administrative fee. *See* N.C. Gen. Stat. §§ 150B-1(d)(6), 150B-19(5), 150B-21.3(c1).

Plaintiff challenges the trial court's conclusion of law one as contrary to established law and argues the trial court improperly interpreted the statutes at issue.

This inquiry into statutory construction is a law-based inquiry and warrants *de novo* review. *Trayford v. N.C. Psychology Bd.*, 174 N.C. App. 118, 122, 619 S.E.2d 862, 865 (2005), *aff'd*, 360 N.C. 396, 627 S.E.2d 462 (2006). "Statutes on the same subject are to be reconciled if this can be done by giving effect to the fair and reasonable intendment of both acts." *Commercial Credit Corp. v. Robeson Motors*, 243 N.C. 326, 334, 90 S.E.2d 886, 892 (1956) (internal quotation marks and citation omitted). In addition:

> Statutory provisions must be read in context: Parts of the same statute dealing with the same subject matter must be considered and interpreted as a whole. Statutes dealing with the same subject matter must be construed *in pari materia*, as together constituting one law, and harmonized to give effect to each.

*In re Proposed Assessments v. Jefferson-Pilot Life Ins. Co.*, 161 N.C. App. 558, 560, 589 S.E.2d 179, 181 (2003) (internal-quotation marks and citations omitted).

In his complaint, plaintiff argues that defendant NCDOC's policy establishing a ten dollar ($10.00) administrative fee for disciplinary violations resulting in a guilty disposition violates N.C. Gen. Stat. § 12-3.1. This statute, found under Chapter 12 addressing statutory construction, is titled "Fees and charges by agencies," and provides:

> Only the General Assembly has the power to authorize an agency to establish or increase a fee or charge for the rendering of any service or fulfilling of any duty to the public. In the construction of a statute, *unless that construction would be inconsistent with the manifest intent of the General Assembly or repugnant to the context of the statute*, the legislative grant of authority to an agency to adopt rules shall not be construed as a grant of authority to the agency to establish by rule a fee or a charge for the rendering of any service or fulfilling of any duty to the public, unless the statute expressly provides for the grant of authority to establish a fee or charge for that specific service.

N.C. Gen. Stat. § 12-3.1(a) (2009) (emphasis added). The current version of the statute, amended before plaintiff filed the present action but after defendant NCDOC promulgated its fee policy, provides additional guidelines with which a state agency must comply in order to

seek authority for the imposition of an administrative fee, but the above language has remained unchanged. *See* N.C. Gen. Stat. § 12-3.1(a)(1997), *amended by* S.L. 2001-427, § 8(a), eff. Sept. 28, 2001; S.L. 2002-99, § 7(c), eff. Aug. 29, 2002; S.L. 2005-276, § 6.8(b), eff. July 1, 2005. The clear purpose of this statute is to eliminate any inherent power of state agencies to impose fees for rendering public services or fulfilling public duties that might be construed as part of the agency's rule-making power granted under the APA, found under Chapter 150B of the North Carolina General Statutes.

The APA itself expressly regulates the imposition of fees and charges by state agencies. Section 150B-19, titled "Restrictions on what can be adopted as a rule," found under Article 2A of the APA, provides: "An agency may not adopt a rule that does one or more of the following: . . . (5) Establishes a fee or other charge for providing a service in fulfillment of a duty unless a law specifically authorizes the agency to do so . . . ." N.C. Gen. Stat. § 150B-19(5)(2009). Section 150B-19(5) then enumerates certain exceptions from the prohibition against adopting rules which establish fees for public services. *Id.* The first part of section 12-3.1(a), as quoted above, simply reinforces this provision, emphasizing that the APA's grant of rule-making authority is not to be construed as a general authority to establish an administrative fee for the rendering of services or fulfillment of duties to the public. Notably, section 12-3.1(c) contains the same list of exceptions as found under section 150B-19(5). *See* N.C. Gen. Stat. § 12-3.1(c). As such, section 12-3.1 and section 150B-19(5) contain reciprocal provisions.

Further, section 150B-21.3(c1), also found under Article 2A of the APA, provides: "Notwithstanding any other provision of this section, a rule that establishes a new fee or increases an existing fee shall not become effective until the agency has complied with the requirements of [section] 12-3.1." N.C. Gen. Stat. § 150B-21.3(c1) (2009). Reading all three statutes *in pari materia*, it is clear that the intent of the legislature is to restrict state agencies from promulgating rules that charge fees for providing public services or fulfilling public duties without first obtaining an explicit grant of legislative authority to do so and complying with the proper approval procedures.

However, also under the APA, the legislature expressly provides: "Exemptions from Rule Making.—Article 2A of this Chapter does not apply to the following: . . . (6) The Department of Correction, with respect to matters relating solely to persons in its custody or under

its supervision, including prisoners, probationers, and parolees." N.C. Gen. Stat. § 150B-1(d)(6) (2009). The clear intent of the legislature, therefore, is to authorize defendant NCDOC to promulgate any rules, including those which establish fees, as they relate solely to prisoners, probationers, and parolees in NCDOC custody. Section 12-3.1 expressly commands this result, as requiring defendant NCDOC to first obtain further legislative authority to institute a fee as against prisoners pursuant to section 12-3.1(a) while simultaneously exempting NCDOC from doing the same under the APA would be "repugnant to the context of the statute." N.C. Gen. Stat. § 12-3.1(a). We perceive no conflict between section 12-3.1 and Chapter 150B, the APA. Construing these statutes *in pari materia*, we conclude that the trial court's conclusion of law one is without error.

## VII. Conclusion of law two

[8] Plaintiff also assigns error to the trial court's conclusion of law two. Again, because this inquiry into statutory construction is a law-based inquiry, we review the trial court's conclusion of law two *de novo*. *Trayford*, 174 N.C. App. at 122, 619 S.E.2d at 865.

Conclusion of law two states:

The provision of the [NCDOC] Inmate Disciplinary Procedures that provides for the imposition of a ten ($10.00) dollar administrative fee for inmates whose disciplinary offenses result in a guilty disposition is neither a service rendered to the public nor is it [a] duty owed to the public. Accordingly, N.C. Gen. Stat. § 12-3.1 does not apply to the imposition of an inmate disciplinary administrative fee.

As we have stated previously, the first sentence of N.C. Gen. Stat. § 12-3.1(a) provides: "Only the General Assembly has the power to authorize an agency to establish or increase a fee or charge for the rendering of any service or fulfilling of any duty to the public." *Id.* Plaintiff argues this statute, by itself, prohibits defendant NCDOC's actions in the present case for two reasons: first, plaintiff argues the statute must be construed to establish that NCDOC may not "establish or increase a fee." Plaintiff reads the "or" connector in the statute as disjunctive and contends that each phrase is to be considered separately from the others, and that the phrase "to the public" only applies to duties owed by state agencies. Second, plaintiff contends that if the phrase "to the public" applies to the whole of the statute, the statute applies to fees charged against prisoners because prisoners

are members of "the public." Plaintiff's attempt at statutory construction is erroneous.

The "cardinal principle" of statutory construction is to "ensure accomplishment of the legislative intent." *L.C. Williams Oil Co. v. NAFCO Capital Corp.*, 130 N.C. App. 286, 289, 502 S.E.2d 415, 417 (1998). Accordingly, we must consider "the language of the statute or ordinance, the spirit of the act and what the act seeks to accomplish." *Hayes v. Fowler*, 123 N.C. App. 400, 404-05, 473 S.E.2d 442, 445 (1996) (internal quotation marks and citation omitted). "When the language of a statute is clear and without ambiguity, 'there is no room for judicial construction,' and the statute must be given effect in accordance with its plain and definite meaning." *Avco Financial Services v. Isbell*, 67 N.C. App. 341, 343, 312 S.E.2d 707, 708 (1984) (quoting *Williams v. Williams*, 299 N.C. 174, 180, 261 S.E.2d 849, 854 (1980)). However, if a literal reading of the statutory language "yields absurd results . . . or contravenes clearly expressed legislative intent, 'the reason and purpose of the law shall control and the strict letter thereof shall be disregarded.' " *Id.* (quoting *State v. Barksdale*, 181 N.C. 621, 625, 107 S.E. 505, 507 (1921)); *see also Kaminsky v. Sebile*, 140 N.C. App. 71, 76, 535 S.E.2d 109, 112-13 (2000). Further,

> [w]here one statute deals with a subject in detail with reference to a particular situation . . . and another statute deals with the same subject in general and comprehensive terms . . . , the particular statute will be construed as controlling in the particular situation unless it clearly appears that the General Assembly intended to make the general act controlling in regard thereto.

*State v. Leeper*, 59 N.C. App. 199, 202, 296 S.E.2d 7, 9 (1982).

Plaintiff demands that this Court read the statute literally and disjunctively and find that the statute commands that "only the General Assembly has the power to authorize an agency to establish or increase a fee." We conclude such a reading is contrary to the manifest intention of the legislature. As we have already stated, section 12-3.1 must be read *in pari materia* with the provisions of Chapter 150B, the APA. From the statutory structure, it is evident that the legislature intended for section 12-3.1, found under the chapter addressing general rules of statutory construction, to operate as a general limitation on the rule-making powers of state agencies which are found under Article 2A of Chapter 150B. Two separate provisions found under Chapter 150B further demonstrate that intent, specifically section 150B-19(5), which contains reciprocal provisions of

section 12-3.1, and section 150B-21.3(c1), which provides that "a rule that establishes a new fee or increases an existing fee shall not become effective until the agency has complied with the requirements of [section] 12 3.1." N.C. Gen. Stat. § 150B-21.3(c1). This last provision is strong evidence that section 12-3.1 only operates as a general limitation on the rule-making provisions of Article 2A under Chapter 150B, and cannot be read as an outright prohibition against an agency's authority to charge a fee in certain circumstances. Rather, section 150B-1(d)(6) unequivocally exempts defendant NCDOC from the rule-making provisions altogether, so long as the rules in question address "matters relating solely to persons in its custody or under its supervision[.]" N.C. Gen. Stat. § 150B-1(d)(6). As such, the particular statute addressing defendant NCDOC's rule-making authority for prisoners, which applies to the specific circumstances of the present case, controls over the general limitation on establishment of fees found under the statutory construction provisions of section 12-3.1. Plaintiff's strictly literal reading of the statute would produce absurd results contrary to legislative intent, and therefore must be disregarded.

**[9]** Moreover, the language of section 12-3.1 itself reveals the intent of the legislature to limit only the establishment or increasing of a fee to be charged for rendering public services or fulfilling public duties:

> [T]he legislative grant of authority to an agency to adopt rules shall not be construed as a grant of authority to the agency to establish by rule a fee or a charge for the rendering of any service or fulfilling of any duty to the public, *unless the statute expressly provides for the grant of authority to establish a fee or charge for that specific service.*

N.C. Gen. Stat. § 12-3.1(a) (emphasis added). From the language used, it is evident that the legislature intended the phrase "to the public" to apply to the entire statute, thereby limiting only the power of state agencies to charge fees for rendering public services or fulfilling public duties.

Plaintiff argues that, even if the statute is construed to apply only to services rendered to the public, the statute still applies to defendant NCDOC's actions because prisoners are members of "the public." While the term "public" is not defined in the statute, we must give the term its "natural and ordinary meaning." *Perkins v. Arkansas Trucking Servs., Inc.*, 351 N.C. 634, 638, 528 S.E.2d 902, 904 (2000). "In

the absence of a contextual definition, courts may look to dictionaries to determine the ordinary meaning of words within a statute." *Id.*

"Public" has been defined as "[t]he people of a nation or community as a whole." *Black's Law Dictionary* 1264 (8th ed. 2004). Both plaintiff and defendant NCDOC also recognize that "public" has been defined as "the body of the people at large." *Black's Law Dictionary* 1227 (6th ed. 1990). In addition, "public service" is defined as "[a] service provided or facilitated by the government for the general public's convenience and benefit." *Black's Law Dictionary* 1268 (8th ed. 2004). Prisoners are held under the custody of defendant NCDOC, and therefore are not part of the "people at large," "the general public," or the "community as a whole." Rather, by virtue of their confinement, prisoners are removed entirely from the community and are detained so that they are not "at large." Therefore, because prisoners are not members of the "public," section 12-3.1 is wholly inapplicable to the actions of defendant NCDOC as against those persons in its custody. Such a construction is entirely consistent with the statutory scheme of Chapter 150B which exempts defendant NCDOC from the rule-making provisions governing state agencies when the rules at issue concern only those persons in defendant NCDOC's custody. State agencies generally service the public at large, and defendant NCDOC is exempt from those regulations under the APA with respect to persons in its custody who necessarily are not members of the public. As such, the trial court's conclusion of law two is without error.

## VIII. Second motion for judgment on the pleadings

**[10]** Plaintiff's final contention is that, because the trial court erred in its conclusions of law, the trial court committed reversible error in granting defendant NCDOC's second motion for judgment on the pleadings. We disagree.

" 'Judgment on the pleadings, pursuant to Rule 12(c), is appropriate when all the material allegations of fact are admitted in the pleadings and only questions of law remain.' " 508, 510 (2010) (quoting *Groves v. Community Hous. Corp.*, 144 N.C. App. 79, 87, 548 S.E.2d 535, 540 (2001)). This Court reviews *de novo* a trial court's grant or denial of a motion for judgment on the pleadings. *Id.*

In the present case, the factual allegations—the implementation of the disciplinary fee at issue—were admitted in the pleadings, and only questions of statutory construction remained. As we have previ-

SPX CORP. v. LIBERTY MUT. INS. CO.

[210 N.C. App. 562 (2011)]

ously stated, questions involving statutory construction are questions of law. *Flowe*, 349 N.C. at 523, 507 S.E.2d at 896. As discussed above, we find the trial court's conclusions of law to be an accurate construction of the statutes at issue in the present case. Accordingly, we hold the trial court properly granted defendant NCDOC's second motion for judgment on the pleadings. The trial court's order dismissing plaintiff's claim, therefore, must be affirmed.

IX. Conclusion

For the foregoing reasons, we affirm the trial court's order granting defendant NCDOC's second motion for judgment on the pleadings and dismissing plaintiff's action.

Affirmed.

Chief Judge MARTIN and Judge McGEE concur.